UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO

In re

MOUNTAIN CITY MEAT CO., INC.

Debtor.

Case No. 11- 32656
Chapter 11

### EMERGENCY MOTION FOR AN ORDER AUTHORIZING SALE OF PERISHABLE MEAT INVENTORY AND APPROVING SALE PROCEDURES

Mountain City Meat Co., Inc. ("Debtor") moves this Court for an order pursuant to 11 U.S.C. §§ 105(a) and 363, and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the sale of the Debtor's meat inventory, free and clear of all liens, claims, encumbrances and interests and approving sale procedures. As noted below, the Debtor seeks interim and final approval of this Motion pursuant to Bankruptcy Rules 6003(b) and (c). In support of this motion (the "Motion"), the Debtor submits the Declaration of Alex G. Smith, concurrently filed herewith, and states as follows:

### I. BACKGROUND

1. On September 24, 2011 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"). The Debtor continues to manage its business as a debtor in possession pursuant to Bankruptcy Code §§ 1107 and 1108.

2. The Debtor is a Colorado corporation and is one of the largest portion control beef processors in the United States. Through its headquarters and manufacturing facility in Denver, Colorado, and its second manufacturing facility in Nashville, Tennessee, the Debtor supplies high quality ground beef and portion control steak cuts through several channels, including retail stores, chain restaurants and broadline food service distributors.

3. Prior to the Petition Date, on August 9, 2011, the Debtor's board of directors (the "Board") appointed BGA Management, LLC d/b/a Alliance Management, through its agent, Alex G. Smith ("Alliance") as Chief Restructuring Officer ("CRO") of the Debtor until the need for a CRO no longer existed, as evidenced by that certain Memorandum of Action of the Board of Directors of Mountain City Meat Co., Inc., dated August 11, 2011, as clarified by that certain Memorandum of Board, dated September 1, 2011 (collectively, the "Board Resolution").

4. Immediately after appointing Alliance as CRO, the Board resigned.

5. Two days later, on August 11, 2011, the Debtor's secured lender, Fifth Third Bank (the "Secured Lender") commenced an action against the Debtor in the Denver District Court, Case No. 2011CV5635, seeking, among other things, the appointment of Alliance as

receiver for substantially all of the Debtor's assets, to operate the Debtor, and prepare the company for sale.

6. At 5:00 p.m. that same day, the Denver District Court entered its Stipulated Order for Forthwith Appointment of Receiver (the "Receivership Order") appointing Alliance as receiver for the Debtor's personal property and related operations.

7. However, just minutes earlier, certain putative unsecured creditors of the Debtor initiated an involuntary petition under chapter 7 of the Bankruptcy Code, commencing case number 11-29209-HRT (the "Involuntary Case"), which the Debtor is currently contesting.

8. In the Involuntary Case, the Secured Lender obtained two interim orders, (Dkt. ## 17 and 37), from the Court annulling the automatic stay so the receiver could "continue exercising and complying with the rights, privileges and obligations granted to it pursuant to the Receivership Order."

9. As a result, since August 11, 2011, Alliance, as receiver, has overseen the daily business operations of the Debtor, analyzed the Debtor's commercial and contractual relationships and business, and has begun discussions with several entities interested in purchasing the Debtor's business or assets.

10. Although the goal in this Chapter 11 case is to sell the Debtor's business as a going concern, in the interim—and more specifically, within the weeks immediately following the Petition Date —the Debtor must continue to sell its existing inventory, consisting of finished portion control steaks and ground beef, raw material beef, additives and related packaging supplies (the "Inventory") in order to prevent a substantial loss to the estate. The Inventory had a book value of $6,818,601, as of September 22, 2011. It generally consists of perishable products and frozen pre-packaged meat products that must be used or sold to the consumer by a specific date. As the Inventory ages, it is at greater risk of becoming commercially obsolete, especially to retail stores, who must take into account the time the product remains on their shelves before it is sold to consumers. Thus, with each day the Inventory ages, the pool of potential purchasers shrinks.

11. The Debtor proposes to sell the Inventory according to the same procedures it has followed since the Receivership Order was entered. The procedures (the "Inventory Sale Procedures") are as follows: The Debtor will continue to sell raw material and finished goods to its current customers at the rates the Debtor previously sold its meat inventory to such customers. However, if the current customers do not want to purchase the product, then the Debtor will sell the Inventory by either (a) discounting the Inventory for its existing customers if it is close to its expiration date, (b) selling the Inventory back to the Debtor's vendors for cash, (c) selling the Inventory through meat brokers, who will obtain the highest possible price for the Inventory, but require a commission upon completion of a sale or (d) selling the product to the public on an "as is" basis. The Debtor will employ any and all of these procedures, as needed, to obtain the best possible price for the Inventory. The Debtor will likely employ different methods for different portions of the Inventory, as some of the Inventory is more at risk of becoming commercially obsolete and will need to be sold on a more expedited basis.

12. The Debtor believes that the Inventory Sale Procedures provide the best means of achieving the best possible return for the Inventory in an extremely short timeframe. The Inventory Sale Procedures will also permit Alliance to focus on the sale of the Debtor's other assets as a going concern, and will lead to the highest recovery for the estate.

13. The proceeds from the sale of the Inventory will be used or held by the Debtor in accordance with orders entered by the Court approving the use of cash collateral.

## II. SALE OF THE INVENTORY IS SOUND BUSINESS JUDGMENT

14. Because the Debtor's business is the sale of meat, the Debtor believes that the sale of Inventory pursuant to the Inventory Sale Procedures is in the ordinary course of the Debtor's business since the Receivership Order was filed. However, in an abundance of caution, the Debtor is filing this Motion to assure parties in interest that it is complying with its duties under the Bankruptcy Code and to assure its creditors that it is selling the Inventory on the best possible terms.

15. Bankruptcy Code § 363 authorizes a debtor to sell assets of the estate other than in the ordinary course of business free and clear of liens, claims and encumbrances. See 11 U.S.C. § 363(b)(1) and (f); Fed. R. Bankr. P. 6004(f)(1) ("All sales not in the ordinary course of business may be by private sale or by public auction."). The decision to sell assets outside the ordinary course of business must be based upon a debtor's sound business judgment. In re Castre, Inc., 312 B.R. 426, 428 (Bankr. D. Colo. 2004).

16. Additionally, Bankruptcy Code § 105(a) provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code. Bankruptcy Code § 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Further, pursuant to Bankruptcy Code § 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. See, e.g., Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); In re Cooper Props. Liquidating Trust, Inc., 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

17. Here, more than ample business justification exists to sell the Inventory pursuant to the Inventory Sale Procedures. The Inventory is of the same quality the Debtor's customers demanded pre-petition. However, due to its perishable nature, it must be sold quickly or it will lose its value in the marketplace. The Inventory Sale Procedures take into account that the Inventory must be sold quickly, but that it needs to be sold in a manner that does not hinder a potential sale of the Debtor's business or its personal property.

18. In the Debtor's business judgment, the Inventory Sale Procedures are the most efficient and cost-effective method for selling the Inventory, and will minimize any potential loss in value. Notably, the Secured Lender—who asserts a first priority security interest in the

Inventory—consents to these procedures, subject to its lien attaching to sale proceeds as provided below.

### III. SALE OF THE INVENTORY MUST BE FREE AND CLEAR OF ALL LIENS, ENCUMBRANCES, AND OTHER INTERESTS, WITH VALID LIENS ATTACHING TO SALE PROCEEDS

19. In order to facilitate the sale of the Inventory, the Debtor also requests authorization to sell the Inventory free and clear of any and all liens, encumbrances, and other interests, provided, however, that liens on the Inventory shall attach with the same validity and priority as provided by applicable law.

20. A debtor-in-possession may sell property under Bankruptcy Code §§ 363(b) and 363(f) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

> 1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> 2) such entity consents;
>
> 3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> 4) such interest is in bona fide dispute; or
>
> 5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

21. Here, Bankruptcy Code § 363(f) is satisfied, as the Secured Lender has consented to the sale, so long as the Bank's lien attaches to the proceeds of the proposed sale to the same extent, validity and priority as existed in the Inventory prior to the sale. To the extent any vendors have liens in the Inventory, such liens will attach to the same extent, validity and priority as existed in the Inventory prior to the sale.

### IV. REQUEST FOR INTERIM ORDER AND WAIVER OF STAY

22. The Debtor requests immediate entry of an interim order, as the Inventory is perishable and must be sold within the first 21 days of this case. Additionally, the Debtor requests a waiver of any stay of the effectiveness of the order approving the relief requested in this Motion. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

23. Given the immediate and irrevocable harm to the estate if the Debtor cannot sell the Inventory within the first few days of this case and immediately upon approval of the Motion, more than ample cause exists to enter an interim order pursuant to Bankruptcy Rule 6003 and waive the 14-day stay imposed by Bankruptcy Rule 6004(h) for all orders.

**WHEREFORE**, the Debtor requests that the Court enter an Order granting the relief requested in this Motion and such other relief as is just and proper.

Dated this 24th day of September, 2011.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

*s/Michael J. Pankow*
Michael J. Pankow, #21212
Daniel J. Garfield, #26054
Heather E. Schell, #38931
410 17th Street, Suite 2200
Denver, Colorado  80202
Telephone:  (303) 223-1100
Facsimile:  (303) 223-1111
mpankow@bhfs.com
dgarfield@bhfs.com
hschell@bhfs.com

*Proposed Attorneys for the Debtor*
