UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO

| | |
|---|---|
| In re <br><br> MOUNTAIN CITY MEAT CO., INC. <br><br> Debtor. | Case No. 11- 32656 <br> Chapter 11 |

**MOTION FOR ENTRY OF CONSENSUAL ORDER (I) AUTHORIZING USE OF CASH COLLATERAL, (II) PROVIDING ADEQUATE PROTECTION AND (III) SCHEDULING A FINAL HEARING**

Mountain City Meat Co, Inc. (the "Debtor") moves this Court pursuant to 11 U.S.C. §§ 361 and 363, Rule 4001(b) and (d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 4001-3 for entry of a consensual interim order and a final order (a) authorizing the Debtor's use of cash collateral, (b) providing adequate protection to the Debtor's pre-petition secured lender, and (c) prescribing the form and manner of notice, and setting a final hearing on this Motion (the "Final Hearing"). In support thereof, the Debtor submits the Declaration of Alex G. Smith, the Debtor's chief restructuring officer, filed concurrently herewith, and states as follows:

## I. BACKGROUND

1. On September 24, 2011 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"). The Debtor continues to manage its business as a debtor in possession pursuant to Bankruptcy Code §§ 1107 and 1108.

2. The Debtor is a Colorado corporation and is one of the largest portion control beef processors in the United States. Through its headquarters and manufacturing facility in Denver, Colorado, and its second manufacturing facility in Nashville, Tennessee, the Debtor supplies high quality ground beef and portion control steak cuts through several channels, including retail stores, chain restaurants and broadline food service distributors.

3. Prior to the Petition Date, on August 9, 2011, the Debtor's board of directors (the "Board") appointed BGA Management, LLC d/b/a Alliance Management, through its agent, Alex G. Smith ("Alliance") as Chief Restructuring Officer ("CRO") of the Debtor until the need for a CRO no longer existed, as evidenced by that certain Memorandum of Action of the Board of Directors of Mountain City Meat Co., Inc., dated August 11, 2011, as clarified by that certain Memorandum of Board, dated September 1, 2011.

4. Immediately after appointing Alliance as CRO, the Board resigned.

5. Two days later, on August 11, 2011, the Debtor's secured lender, Fifth Third Bank (the "Secured Lender") commenced an action against the Debtor in the Denver District

15368\2\1580661.12

Court, Case No. 2011CV5635, seeking, among other things, the appointment of Alliance as receiver for substantially all of the Debtor's assets, to operate the Debtor, and prepare the company for sale.

6. At 5:00 p.m. that same day, the Denver District Court entered its Stipulated Order for Forthwith Appointment of Receiver (the "Receivership Order") appointing Alliance as receiver for the Debtor's personal property and related operations.

7. However, just minutes earlier, certain putative unsecured creditors of the Debtor initiated an involuntary petition under chapter 7 of the Bankruptcy Code, commencing case number 11-29209-HRT (the "Involuntary Case"), which the Debtor is currently contesting.

8. In the Involuntary Case, the Secured Lender obtained two interim orders, (Dkt. ## 17 and 37), from the Court annulling the automatic stay so the receiver could "continue exercising and complying with the rights, privileges and obligations granted to it pursuant to the Receivership Order."

9. The Secured Lender asserts a first priority lien and security interest in all of the Debtor's personal property (the "Collateral"), including all of the Debtor's cash (the "Cash Collateral") pursuant to a Loan and Security Agreement the Debtor executed in favor of the Secured Lender, dated November 6, 2009, and as amended by the First Amendment to Loan and Security Agreement dated March 7, 2011 (the "Security Agreement"). The Security Agreement secures the payment of the Debtor's obligations under a Revolving Note in the amount of $20,000,000, dated November 6, 2009, as amended by the First Amended and Restated Revolving Note in the amount of $25,000,000, dated March 7, 2011 (the "Revolving Note"), and a Term Note in the amount of $4,000,000, dated November 6, 2009, as amended by the First Amended and Restated Term Note in the amount of $2,519,213, dated March 7, 2011 (the "Term Note" and together with the Security Agreement and the Revolving Note, the "Loan Documents"). The Secured Lender asserts that the Debtor is indebted to the Secured Lender under the Loan Documents in the amount of $17,773,541.47, consisting of principal and accrued interest as of August 11, 2011, and the Debtor has made payments to the Secured Lender in the amounts of $5,500,000.00, $2,000,000.00 and $1,050,000.00 since August 11, 2011.

## II. RELIEF REQUESTED

10. The Debtor seeks authorization for the use of the Cash Collateral (a) on an interim basis pending the Final Hearing, pursuant to the Interim Order Authorizing Use of Cash Collateral submitted contemporaneously herewith (the "Interim Cash Collateral Order") and (b) on a final basis pursuant to a final order submitted contemporaneously herewith (the "Final Cash Collateral Order"). The Secured Lender has consented to the terms of the Interim Cash Collateral Order, and the proposed use of the Cash Collateral would be on a consensual basis under that order. However, the proposed Final Cash Collateral Order provides for the Debtor to waive any claims under Bankruptcy Code § 506(c). The Debtor expressly reserves its right to object to the inclusion of such a provision and the right to seek nonconsensual relief.

11. The Debtor will suffer immediate and irreparable harm, as required by Bankruptcy Rule 4001(b)(2), without the use of the Cash Collateral on an interim basis. The

Debtor plans to sell substantially all of its assets within the first month or two of this case and has several motions pending to effectuate a sale and continue to its operations until a sale. Without the use of the Cash Collateral, the Debtor would not be able to continue to negotiate with potential purchasers of its assets, close a sale within one to two months, or sell its current perishable inventory before it becomes commercially obsolete and has significantly less valuable. Accordingly, the Debtor requests that the Court enter the Interim Cash Collateral Order within three days of this Motion, consistent with L.B.R. 2081-1, and schedule a final hearing on the matter as soon as practicable.

12.     For the same reasons described above, entry of the Final Cash Collateral Order is in the best interest of the Debtor, the Debtor's bankruptcy estate, and the Debtor's creditors. With use of the Cash Collateral, the Debtor will be able to pay its ongoing business expenses, which, in turn, will preserve and protect the Debtor's assets and assist the Debtor in its efforts to sell its assets, thereby maximizing the value of its estate.

A.     **Summary of Terms Contained in the Interim Cash Collateral Order**

13.     A summary of the key terms of the Interim Cash Collateral Order are set forth below:

- Entities Claiming an Interest in Cash Collateral: The Secured Lender is the sole party claiming an interest in the Cash Collateral. (Interim Cash Collateral Order at ¶¶ D, F, and G).[1]

- Purposes for Use of Cash Collateral: The Debtor seeks to use the Cash Collateral to (i) provide the Debtor with funds to continue the sale of its inventory and to sell its equipment in an orderly basis to maximize value, (ii) for such other general corporate purposes as may be permitted by the Court and applicable law, and (iii) to pay its professionals, all in conformity with the Budget (as defined in the Interim Cash Collateral Order). (Interim Cash Collateral Order at ¶¶ N and 3(e)). A copy of the Budget is attached hereto as Exhibit 1.

- Term: The Debtor's authorization to use Cash Collateral pursuant to the Interim Cash Collateral Order would end on October 31, 2011 (Interim Cash Collateral Order at ¶ 2).

- Adequate Protection: The Debtor will provide the Secured Lender with (i) a replacement lien on all the Debtor's property; (ii) a super-priority claim pursuant to Bankruptcy Code § 507(b), subject to the Carveout below; (iii) continuation of the Secured Lender's liens as provided in Bankruptcy Code § 552(b), protection of the Secured Lender's liens from subordination to any lien or security interest that is avoided and preserved under Bankruptcy Code § 551 or any liens and security interests arising in favor of any other entity after the Petition Date; and (v) preservation of credit bid rights. (Interim Cash Collateral Order at ¶ 3).

---

[1] XL Foods Inc. filed a UCC financing statement on August 10, 2011, a day before the Involuntary Case claiming a blanket lien on all of the Debtor's assets. However, the Debtor is not aware of any security interest held by XL Foods.

- Carveout: The liens, security interests and any super-priority administrative expense claims of the Secured Lender shall be subject to and subordinate to (i) payment of quarterly fees to the U.S. Trustee (ii) fees and expenses of Alliance and its professionals; and (iii) allowed, unpaid fees and expenses of attorneys, accountants, and other professionals retained in these cases by the Debtor or by any statutory committee of creditors appointed in these cases, all in such amounts as agreed to by Secured Lender as set forth in the Budget and only as allowed by orders of the Court, and not to exceed a total amount of $298,961.00. (Interim Cash Collateral Order at ¶3(f)).

14. The proposed Interim Cash Collateral Order contains the following provisions set forth in L.B.R. 4001-3(a) App: (a) provisions or findings of fact binding the estate as to validity, perfection, or amount of a secured lien. (Interim Cash Collateral Order at ¶¶ C, D, E, F, and G); and (b) provisions or findings of fact binding the estate or all parties in interest with respect to the relative priority's of the secured party's lien and liens held by persons who are not party to the stipulation. (Interim Cash Collateral Order at ¶¶ D, F, and G).

15. The proposed Final Cash Collateral Order contains the provisions set forth above and additionally contains a waiver of Bankruptcy Code § 506(c), which is another provision set forth in L.B.R. 4001-3(a) App. (Final Cash Collateral Order at ¶ 4). Notwithstanding the inclusion of this waiver in the proposed Final Cash Collateral Order, the Debtor is explicitly reserving its right to object to the inclusion of such waiver prior to the Final Hearing and to proceed on a nonconsensual basis.

**B.     Proposed Adequate Protection**

16. The Secured Lender has expressly consented to the adequate protection submitted in the proposed orders on an interim and a final basis.

17. "Adequate protection is, essentially, protection for the creditor to assure its collateral is not depreciating or diminishing in value and is made on a case-by-case basis." In re Gunnison Ctr. Apts., LP, 320 B.R. 391, 396 (Bankr. D. Colo. 2005).

18. The Tenth Circuit has provided clear and powerful direction to bankruptcy courts applying the "adequate protection" standard to the use of cash collateral, especially in early stages of a Chapter 11 case:

> Debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the **purpose of enhancing the prospects of reorganization**. This quest is the ultimate goal of Chapter 11. Hence, **the Debtors' efforts are not only to be encouraged, but also their efforts during the administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to achieve that end.** Thus, while interests of the secured creditor whose property rights are of concern to the court, the interests of all other creditors also have bearing upon the question of whether use of cash collateral shall be permitted during the early stages of administration.

> The first effort of the court must be to insure the value of the collateral will be preserved. Yet, prior to confirmation of a plan of reorganization, the test of that protection is not by the same measurements applied to the treatment of a secured creditor in a proposed plan. **In order to encourage the Debtors' efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard.**

MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393, 1397-98 (10th Cir. 1987) (emphasis added) (citations omitted). In O'Connor, the Tenth Circuit affirmed a finding of adequate protection based upon replacement liens in new, unproven oil and gas wells (in a proven field) as consistent with the "values and risks" bargained for by the secured lender in that case. Id.

19. The Debtor's proposed use of the Cash Collateral to maintain its business is consistent with O'Connor as well as the Morning Star standard consistently used in this District, which provides that a secured lender "is at best entitled to the protection to which he would have been entitled had a receiver been appointed." See In re Morning Star Ranch, 64 B.R. 818, 822 (Bankr. D. Colo. 1986). The proposed use of the Cash Collateral here is consistent with the receiver's consensual use of the Cash Collateral prior to the Petition Date. Further, it will facilitate a successful reorganization and will be strictly used to enhance the Debtor's restructuring efforts, preserve the value of the Debtor's assets and pay the Debtor's professionals and CRO, all as authorized by the Secured Lender in accordance with the Budget.

20. As further adequate protection, the proposed Interim Cash Collateral Order and Final Cash Collateral Order also provide for (i) a replacement lien on all the Debtor's property; (ii) a super-priority claim pursuant to Bankruptcy Code § 507(b), subject to the carve out described above; (iii) continuation of the Secured Lender's liens as provided in Bankruptcy Code § 552(b), (iv) protection of the Secured Lender's liens from subordination to any lien or security interest that is avoided and preserved under Bankruptcy Code § 551 or any liens and security interests arising in favor of any other entity after the Petition Date; and (v) preservation of credit bid rights.

21. For the reasons set forth herein, the Debtor submits that, under the circumstances of this case, the interest of the Secured Lender is adequately protected. Approval of the use of Cash Collateral will allow the Debtor to fund an orderly sale of its business, thereby maximizing value for its creditors without harming or prejudicing the rights or interests of the Secured Lender.

## C.  Request for Final Hearing

22. Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(d)(3), the Debtor requests that the Court set a date for the Final Hearing that is as soon as practicable, and fix the time and date prior to the Final Hearing for parties to file objections to the Motion.

**WHEREFORE**, the Debtor requests that the Court enter an Order granting the relief requested in this Motion and such other relief as is just and proper.

Dated this 24th day of September, 2011.

                **BROWNSTEIN HYATT FARBER SCHRECK, LLP**

                *s/Michael J. Pankow*
                Michael J. Pankow, #21212
                Daniel J. Garfield, #26054
                Heather E. Schell, #38931
                410 17th Street, Suite 2200
                Denver, Colorado  80202
                Telephone:  (303) 223-1100
                Facsimile:  (303) 223-1111
                mpankow@bhfs.com
                dgarfield@bhfs.com
                hschell@bhfs.com

                *Proposed Attorneys for the Debtor*

1 Mountain City Meat Co., Inc.
2 Weekly Cash Flow Statement and Availability Analysis

|  |  | Weekly Cash Flow Projection | | | | | | |
|---|---|---|---|---|---|---|---|---|
|  |  | Estimated W/E | Projected W/E | Projected W/E | Projected W/E | Projected W/E | Projected W/E | Current Week Cumm |
|  |  | 09/25/11 | 10/02/11 | 10/09/11 | 10/16/11 | 10/23/11 | 10/30/11 | Total |
| 9 | Operating Cash Flow | | | | | | | |
| 10 | Sources of Cash | | | | | | | |
| 11 | +Cash Collections | 800,275 | 868,673 | 1,361,199 | 479,575 | 2,084,515 | 1,197,426 | 6,791,664 |
| 12 | +Other Cash Collections | | | | | | | 0 |
| 13 | Total Sources of Cash | 800,275 | 868,673 | 1,361,199 | 479,575 | 2,084,515 | 1,197,426 | 6,791,664 |
| 14 | Uses of Cash | | | | | | | |
| 15 | Disbursements | | | | | | | |
| 16 | Payroll, Payroll Taxes | 143,000 | 63,000 | 146,000 | 16,000 | 87,000 | 12,000 | 467,000 |
| 17 | Employee Insurance & Benefits | 1,500 | 8,700 | 1,500 | 1,500 | 1,500 | 5,100 | 19,800 |
| 18 | Rent | 140,000 | 0 | 0 | 0 | 0 | 140,000 | 280,000 |
| 19 | Insurance | 56,500 | 34,000 | 0 | 21,000 | 0 | 0 | 111,500 |
| 20 | New Production Direct and Indirect Cost | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 21 | Utilities & Telephone(Just Utilities) | 67,327 | 122,729 | 95,056 | 0 | 0 | 0 | 285,112 |
| 22 | Equipment & Vehicle Leases | 3,000 | 1,000 | 3,000 | 0 | 3,000 | 1,000 | 11,000 |
| 23 | Freight Expenses | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 30,000 |
| 24 | Professional Fees | 200,000 | 0 | 80,000 | 60,000 | 0 | 180,000 | 520,000 |
| 25 | Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 26 | Waste removal | 0 | 1,000 | 0 | 0 | 0 | 1,000 | 2,000 |
| 27 | Storage Expenses | 10,066 | 5,100 | 5,100 | 2,600 | 2,600 | 2,600 | 28,066 |
| 28 | Security Expenses | 30,000 | 2,000 | 2,330 | 2,000 | 3,700 | 2,000 | 42,030 |
| 29 | Other G&A, Sls Tx,Bank Fees | | | | | | | 0 |
| 30 | Interest | 0 | 50,000 | 0 | 0 | 0 | 0 | 50,000 |
| 31 | Misc | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 120,000 |
| 32 | Total Disbursements (excl. float) | 676,393 | 312,529 | 357,986 | 128,100 | 122,800 | 368,700 | 1,966,508 |
| 33 | Book-to-bank Cash Adjustment (float) - Current | | | | | | | 0 |
| 34 | Book-to-bank Cash Adjustment (float) - Projected | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 35 | Book-to-bank Cash Adjustment (float) - Cleared | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 36 | Total Operating Expenditures: | 676,393 | 312,529 | 357,986 | 128,100 | 122,800 | 368,700 | 1,966,508 |
| 37 | Net Operating Cash Flow Before LOC | 123,882 | 556,144 | 1,003,213 | 351,475 | 1,961,715 | 828,726 | 4,825,157 |
| 38 | Increase/(Decrease) in Revolver | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 39 | (1) Net Operating Cash Flow | 123,882 | 556,144 | 1,003,213 | 351,475 | 1,961,715 | 828,726 | 4,825,157 |
| 40 | Investing Cash Flow | | | | | | | |
| 41 | Net (Transfer to/from RLOC | | | | | | | 0 |
| 42 | Net (Purchase)/Sale of Other Assets | | | | | | | 0 |
| 43 | (2) Net Investing Cash Flow | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 44 | Financing Cash Flow | | | | | | | |
| 45 | Incr/(Decr) Note Payable- Term A | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 46 | Incr/(Decr) Note Payable- Term B | | | | | | | 0 |
| 47 | Incr/(Decr) Equity | | | | | | | 0 |
| 48 | (3) Net Financing Cash Flow | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 49 | | | | | | | | |
| 50 | (4) Net Cash Flow (Sum 1-3) | 123,882 | 556,144 | 1,003,213 | 351,475 | 1,961,715 | 828,726 | 4,825,157 |
| 51 | (5) Beginning Cash | 2,501,981 | 2,625,863 | 3,182,007 | 4,185,220 | 4,536,696 | 6,498,411 | 2,501,981 |
| 52 | (6) Ending Cash (4+5) | 2,625,863 | 3,182,007 | 4,185,220 | 4,536,696 | 6,498,411 | 7,327,137 | 7,327,137 |

EXHIBIT 1

Mountain City Meat Co., Inc.
Weekly Cash Flow Statement and Availability Analysis

|    |    | Weekly Cash Flow Projection | | | | | | |
|----|----|---|---|---|---|---|---|---|
|    |    | Estimated W/E | Projected W/E | Projected W/E | Projected W/E | Projected W/E | Projected W/E | Current Week Cumm |
|    |    | 09/25/11 | 10/02/11 | 10/09/11 | 10/16/11 | 10/23/11 | 10/30/11 | Total |
| 53 | **Revolver Availability** | | | | | | | |
| 54 | Accounts Receivable | | | | | | | |
| 55 | Total Accounts Receivable | 3,465,924 | 3,783,689 | 3,541,088 | 3,992,596 | 2,517,163 | 1,928,819 | |
| 56 | Less: Ineligible AR | (346,592) | (378,369) | (354,109) | (399,260) | (251,716) | (192,882) | |
| 57 | Eligible Balance | 3,119,332 | 3,405,320 | 3,186,979 | 3,593,337 | 2,265,447 | 1,735,937 | |
| 58 | Advance Rate: | 85.0% | 85.0% | 85.0% | 85.0% | 85.0% | 85.0% | |
| 59 | Total AR Availability | 2,651,432 | 2,894,522 | 2,708,932 | 3,054,336 | 1,925,630 | 1,475,547 | |
| 60 | Inventory | | | | | | | |
| 61 | Total RM/FG Inventory | 4,953,898 | 3,805,028 | 2,718,911 | 1,806,244 | 1,191,429 | 576,613 | |
| 62 | Less: Ineligible | (316,692) | (316,691) | (316,691) | (316,690) | (316,689) | (316,689) | |
| 63 | Eligible Balance | 4,637,206 | 3,488,337 | 2,402,220 | 1,489,554 | 874,740 | 259,924 | |
| 64 | Advance Rate: | 75.0% | 75.0% | 75.0% | 75.0% | 75.0% | 75.0% | |
| 66 | Total Spice Inventory | 688,217 | 678,217 | 668,217 | 658,217 | 648,217 | 638,217 | |
| 67 | Less: Ineligible | 0 | 0 | 0 | 0 | 0 | 0 | |
| 68 | Eligible Balance | 688,217 | 678,217 | 668,217 | 658,217 | 648,217 | 638,217 | |
| 69 | Advance Rate: | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | |
| 71 | Total Inventory Availability | 3,822,013 | 2,955,362 | 2,135,774 | 1,446,274 | 980,163 | 514,052 | |
| 72 | Total Availability | 6,473,445 | 5,849,884 | 4,844,706 | 4,500,610 | 2,905,793 | 1,989,598 | |
| 73 | **Revolver Balance** | | | | | | | |
| 74 | Beginning Revolver Balance | 8,177,812 | 8,177,812 | 8,177,812 | 8,177,812 | 8,177,812 | 8,177,812 | |
| 77 | +/- change in line balance | 0 | 0 | 0 | 0 | 0 | 0 | |
| 78 | Ending Revolver Balance | 8,177,812 | 8,177,812 | 8,177,812 | 8,177,812 | 8,177,812 | 8,177,812 | |
| 79 | Cash Available | 2,625,863 | 3,182,007 | 4,185,220 | 4,536,696 | 6,498,411 | 7,327,137 | |
| 80 | Revolver Available before Reserves, Net of Cash | 921,497 | 854,080 | 852,115 | 859,495 | 1,226,393 | 1,138,924 | |
| 81 | Inventory/AR Reserves | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | |
| 82 | Revolver Available after Reserves, Net of Cash | 421,497 | 354,080 | 352,115 | 359,495 | 726,393 | 638,924 | |
| 83 | Additional Financing Required | 0 | 0 | 0 | 0 | 0 | 0 | |

Note: Dates are week-ending.