UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO

| | |
|---|---|
| In re | |
| MOUNTAIN CITY MEAT CO., INC. | Case No. 11-32656<br>Chapter 11 |
| Debtor. | |

**MOTION FOR AN ORDER OF (I) AN ORDER APPROVING (A) BID PROCEDURES, (B) NOTICE OF SALE, AUCTION, AND SALE HEARING, (C) ASSUMPTION PROCEDURES AND RELATED NOTICES; AND (II) AN ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS**

Mountain City Meat Co., Inc. (the "Debtor") moves this Court pursuant to 11 U.S.C. §§ 105(a), 363 and 365, and Rules 2002, 6004, 6003, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for (1) an order approving the (a) bid procedures, (b) notice of sale, Auction, and Sale Hearing (each as defined below), and (c) assumption procedures and related notices (collectively, the "Bid Procedures Order"); and (2) an order, substantially in the form to be filed with the Court on or prior to the Sale Hearing, approving the sale of substantially all of the Debtor's assets (the "Sale Order"). As noted below, the Debtor is seeking approval of the Bid Procedures Order on an expedited basis and will seek entry of a Sale Order only after the proposed auction has concluded, which the Debtor anticipates will be in mid-October, subject to Court approval.

## I. INTRODUCTION

1. The Debtor requests that the Court grant the following relief in connection with the sale of substantially all or any portion of the Debtor's assets, including the Debtor's equipment and inventory (the "Assets") to the bidder or bidders who submit the highest or otherwise best offer or offers at the conclusion of the Auction (described below), which bidder(s) may be selected by the Debtor as the winning bidder(s) (the "Successful Bidder"):

    a. Immediate entry of the Bid Procedures Order, which will authorize and approve, among other things: (i) the procedures for the conduct of the Auction of the Assets, substantially in the form attached as Exhibit 1 to this Motion and to the proposed Bid Procedures Order; (ii) the procedures for the assumption and assignment of any executory contracts or unexpired leases (the "Assumption Procedures") to the Successful Bidder and the resolution of any objections thereto and related notices; and (iii) the scheduling of a hearing to approve any such sale with respect to any bid accepted by the Debtor (the "Sale Hearing").

    b. Entry of a Sale Order, which will (i) approve the sale of the Assets assumption of contracts or leases pursuant to Bankruptcy Code §§ 105, 363(b), (f), (m), and 365, in accordance with the terms of a purchase agreement executed by the Successful Bidder; which purchase agreement will provide that the sale of the Assets

shall be free and clear of all liens, claims, encumbrances and other interests; and (ii) the assumption and assignment of certain executory contracts and unexpired leases related to the Assets and the Sale.

## II. BACKGROUND

2. On September 24, 2011 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"). The Debtor continues to manage its business as a debtor in possession pursuant to Bankruptcy Code §§ 1107 and 1108.

3. The Debtor is a Colorado corporation and is one of the largest portion control beef processors in the United States. Through its headquarters and manufacturing facility in Denver, Colorado, and its second manufacturing facility in Nashville, Tennessee, the Debtor supplies high quality ground beef and portion control steak cuts through several channels, including retail stores, chain restaurants and broadline food service distributors.

4. Prior to the Petition Date, on August 9, 2011, the Debtor's board of directors (the "Board") appointed BGA Management, LLC d/b/a Alliance Management, through its agent, Alex G. Smith ("Alliance") as Chief Restructuring Officer ("CRO") of the Debtor until the need for a CRO no longer existed, as evidenced by that certain Memorandum of Action of the Board of Directors of Mountain City Meat Co., Inc., dated August 11, 2011, as clarified by that certain Memorandum of Board, dated September 1, 2011 (collectively, the "Board Resolution").

5. Immediately after appointing Alliance as CRO, the Board resigned.

6. Two days later, on August 11, 2011, the Debtor's secured lender, Fifth Third Bank (the "Secured Lender") commenced an action against the Debtor in the Denver District Court, Case No. 2011CV5635, seeking, among other things, the appointment of Alliance as receiver for substantially all of the Debtor's assets, to operate the Debtor, and prepare the company for sale.

7. At 5:00 p.m. that same day, the Denver District Court entered its Stipulated Order for Forthwith Appointment of Receiver (the "Receivership Order") appointing Alliance as receiver for the Debtor's personal property and related operations.

8. However, just minutes earlier, certain putative unsecured creditors of the Debtor initiated an involuntary petition under chapter 7 of the Bankruptcy Code, commencing case number 11-29209-HRT (the "Involuntary Case"), which the Debtor is currently contesting.

9. In the Involuntary Case, the Secured Lender obtained two interim orders, (the "Interim Orders," Dkt. ## 17 and 37), from the Court annulling the automatic stay so the receiver could "continue exercising and complying with the rights, privileges and obligations granted to it pursuant to the Receivership Order."

10. The Interim Orders further granted the receiver the authority to "market for sale the Debtor's [e]quipment and business." (Interim Orders at ¶ 4)

11. Consistent with the authority granted to it under the Receivership Order and the Interim Orders, Alliance has endeavored, both prior to and since entry of the Receivership Order, to sell the Debtor's business as a going concern in order to maximize the value of the Debtor's assets and business operations for the benefit of its creditors. To that end, Alliance actively marketed the Debtor's assets to several potential purchasers. Specifically, Alliance, as receiver, has contacted over 250 potential purchasers and entered into approximately 30 non-disclosure agreements ("NDAs"). Of the parties that signed NDAs, 13 continue to pursue the opportunity to purchase the Debtor's assets, with more NDAs under review and in the process of being signed. Given the Debtor's current financial position and the seasonal nature of its business, the Debtor believes that a sale of all or substantially all of the Debtor's assets within the first month or two of this case is necessary in order to maximize value for the Debtor's estate and stakeholders.

12. Due to Alliance's marketing efforts, there were potential purchasers that expressed a preliminary interest in acquiring the Debtor's assets. Ultimately, however, the Debtor was unable to negotiate a stalking horse agreement prior to the Petition Date. Rather than delay the filing of this case, and because the Debtor believes that a sale occurring after the end of October may produce less interest for potential purchasers, the Debtor determined that it is in the best interests of the estate to file the case and this Motion without a stalking horse bidder and to open the sale to all interested parties, subject to certain procedures described below.

13. Based on the foregoing, the Debtor believes that the Bid Procedures (as defined below) and auction for the sale of substantially all or any portion of the Debtor's assets (the "Auction") will afford the Debtor the best opportunity to market its assets and maximize value for its creditors. This Motion contemplates a sale to one or more purchasers for all or any portion of the Debtor's Assets in an effort to maximize value for the estate.

### III. LEGAL ARGUMENT

**A. The Sale of Substantially All of the Debtor's Assets Is Sound Business Judgment**

14. Bankruptcy Code § 363 authorizes a debtor to sell assets of the estate other than in the ordinary course of business free and clear of liens, claims and encumbrances. See 11 U.S.C. § 363(b)(1) and (f); Fed. R. Bankr. P. 6004(f)(1) ("All sales not in the ordinary course of business may be by private sale or by public auction."). The decision to sell assets outside the ordinary course of business must be based upon a debtor's sound business judgment. In re Castre, Inc., 312 B.R. 426, 428 (Bankr. D. Colo. 2004); In re Psychometric Sys., Inc., 367 B.R. 670, 675 (Bankr. D. Colo. 2007) (debtor's business judgment in a section 363 sale to be given "great deference").

15. Additionally, Bankruptcy Code § 105(a) provides a bankruptcy court with broad powers in the administration of a case so that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Further, pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. See, e.g., Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code.").

16. Particularly since the Involuntary Case was filed, it is the Debtor's business judgment that an Auction with or without a stalking horse bidder, if one is not identified prior to an auction of the Debtor's assets, provides the Debtor with the best alternative to maximize the value of the estate. Alliance has already reached out to a significant pool of interested parties. If a sale of the Debtor's assets does not occur within the next one to two months, the Debtor does not believe that it will be able to obtain any additional interested parties, but does believe that it may lose the interest of some of the parties that have entered into NDAs. Thus, if the sale is delayed, the Debtor believes it will receive lower offers for its Assets or only offers for some of its Assets.

17. By proceeding with the Auction, the Debtor will encourage competitive bidding to obtain the best recovery for its creditors while still maintaining sufficient flexibility for other parties to propose alternative transactions that may yield more value for its estate. The Debtor is continuing its operations at a reduced level until the Auction, so that the Debtor's business can be purchased as a going concern, ensuring that the estate will receive the highest and best offers for the Assets. Thus, the Debtor believes that a sale pursuant to the Auction (a "Sale") presents the best means of recovering the highest value for the Assets.

**B.     The Sale of the Assets Must Be Free and Clear of all Liens, Encumbrances, and Other Interests**

18. In order to facilitate the sale of the Assets, the Debtor also requests authorization to sell the Assets free and clear of any and all liens, encumbrances, and other interests, other than as provided in this Motion.

19. A debtor-in-possession may sell property under Bankruptcy Code § 363(f) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

> 1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> 2) such entity consents;
>
> 3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> 4) such interest is in bona fide dispute; or
>
> 5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

20. Here, Bankruptcy Code § 363(f) is satisfied, as the Secured Lender has consented to the sale, so long as the Secured Lender's lien attaches to the proceeds of the proposed sale to the same extent, validity and priority as existed in the Assets prior to the sale. The Sale might also satisfy § 363(f) if the purchase price of the Assets is greater than the amount of the Secured Creditor's lien.

15368\2\1583472.12                                4

C.     **There Must Be Protection for Good Faith Purchaser**

21.     The Debtor also requests that the Court find that the Successful Bidder is a good faith purchaser within the meaning of Bankruptcy § 363(m), subject to the provision of further representations or evidence at the Sale Hearing. By the Sale Hearing, the Debtor will have fully disclosed and requested this Court's approval of all of the terms and conditions of the proposed sale and bidding procedures and provided notice as required by the Bankruptcy Rules, the Local Bankruptcy Rules, and as otherwise directed by the Court. See In re Colony Hills Assocs., 111 F. 3d 269, 276-77 (2d Cir. 1997). The Successful Bidder will have engaged in the Auction pursuant to the proposed Bid Procedures and any purchase agreement proposed by a Successful Bidder will be the product of arm's-length, good faith negotiations and a competitive bidding process.

D.     **The Proposed Bid Procedures Constitute an Appropriate Process to Obtain the Highest or Best Bid**

22.     The proposed bidding procedures are attached hereto as Exhibit 1 (the "Bid Procedures"). As discussed above, the Debtor believes in its reasonable business judgment that the Bid Procedures and the Auction constitute the best strategy for maximizing the value of the Debtor's assets for the benefit of the various stakeholders. See In re Psychometric Sys., Inc., 367 B.R. at 675. The proposed bid procedures are reasonable given the Debtor's finances, its operations, its prospects, and the short timeframe under which the Debtor must complete a sale.

23.     The proposed Sale Notice and proposed Bid Procedures are appropriate, reasonable, and designed to ensure the most robust bidding and auction process possible for the Assets. In addition to providing appropriate notice, the Debtor will continue to contact various parties who have previously expressed an interest in acquiring assets of the Debtor to determine whether such parties are interested in submitting a bid.

E.     **The Court Should Authorize the Assumption and Assignment of Executory Contracts and Unexpired Leases**

24.     Bankruptcy Code § 365 authorizes the Debtor to assume and/or assign its executory contracts and unexpired leases subject to the approval of the Bankruptcy Court.

25.     The standard governing motions to assume or reject unexpired leases and executory contracts is the business judgment test, which requires a showing that the proposed course of action will benefit the estate. In re Mile High Medal Sys., Inc., 899 F.2d 887, 896 n.13 (10th Cir. 1990); In re Grayhall Resources, Inc., 63 B.R. 382, 384 (Bankr. D. Colo. 1986).

26.     If necessary at the Sale Hearing, the Debtor will proffer evidence or testimony that it has determined that assumption and assignment of executory contracts and unexpired leases in connection with the Sale (collectively, the "Assigned Contracts") represents an exercise of its sound business judgment. Moreover, the Debtor expects to be able to satisfy the requirements of Bankruptcy Code §§ 365(b) and (f) because: (a) undisputed monetary cure obligations for any contracts that are assumed and assigned will be paid, see 11 U.S.C. § 365(b)(1)(A) and (B); and (b) to the extent that a non-debtor party to an Assigned Contract

does not consent to an assignment of such Assigned Contract, the Debtor will be prepared to demonstrate at the sale hearing the requirement of adequate assurances of future performance by the Successful Bidder is satisfied. See 11 U.S.C. § 365(b)(1)(C), (b)(3), and (f)(2). See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538 (Bankr. D. N.J. 1989). The Debtor anticipates that the only Assigned Contracts, if any, will be the nonresidential real property leases for the Debtor's facilities in Denver and Nashville.

27. The Sale Hearing will, therefore, provide the Court and other interested parties with further opportunity to evaluate the ability of the Successful Bidder to provide adequate assurance of future performance under the Assigned Contracts, as required by Bankruptcy Code § 365(b)(1)(C). Accordingly, it is requested that at the conclusion of the Sale Hearing the proposed assumption and assignment of the Assigned Contracts be approved.

F. **The Secured Lender's Right to Participate in the Auction Credit Bid**

28. Pursuant to Bankruptcy Code § 363(k), the Secured Lender will have the right to credit bid up to the current amount outstanding on its secured claim, which as of August 11, 2011 was $17,773,541.47 (the "Credit Bid"). Nothing in the Bid Procedures shall be construed as requiring the Secured Lender to submit a bid prior to the Auction.

G. **Proposed Notice**

29. Upon entry of the Bid Procedures Order, the Debtor shall provide notice consistent with L.B.R. 9013-1.

## IV. REQUEST FOR WAIVER OF STAY AND IMMEDIATE ENTRY OF BID PROCEDURES ORDER

30. The Debtor requests a waiver of any stay of the effectiveness of the orders approving the relief requested in this Motion. Bankruptcy Rules 6004(h) and 6006(d) each provide for a stay of an order authorizing sale under Bankruptcy Code § 363 and assignment of an unexpired lease or executory contract for 14 days. Given the harm to the estate if the Debtor cannot sell the Assets and assign leases and contracts immediately upon entry of the Sale Order Motion, more than ample cause exists to justify a waiver of the 14-day stay.

31. The Debtor further requests that, in order to prevent immediate and irreparable harm, that the Court approved the Bid Procedures Order as soon as practicable pursuant to Bankruptcy Rule 6003(b) and (c) and L.B.R. 2081-1.

**WHEREFORE**, the Debtor requests that the Court enter orders granting the relief requested in this Motion and such other relief as is just and proper.

Dated this 24th day of September, 2011.

                                  **BROWNSTEIN HYATT FARBER SCHRECK, LLP**

                                  *s/Daniel J. Garfield*
                                Michael J. Pankow, #21212
                                Daniel J. Garfield, #26054
                                Heather E. Schell, #38931
                                410 17th Street, Suite 2200
                                Denver, Colorado  80202
                                Telephone:  (303) 223-1100
                                Facsimile:  (303) 223-1111
                                mpankow@bhfs.com
                                dgarfield@bhfs.com
                                hschell@bhfs.com

                                *Attorneys for the Debtor*

## SALE NOTICE, BID PROCEDURES, AUCTION AND RELATED DEADLINES

Set forth below are the bidding procedures (the "Bid Procedures") to be employed with respect to the selection of the highest or otherwise best bid(s) for all or any portion of the assets (the "Assets") of Mountain City Meat Co., Inc.( the "Debtor"). The Debtor is offering for sale its Assets and any portion of the Assets. Except as otherwise provided in definitive documentation with respect to the sale of the Assets (the "Sale"), all of the Debtor's rights, title and interest in and to the Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon in accordance with section 363 of title 11 of the United States Code (the "Bankruptcy Code"). As set forth in more detail below, the Debtors will conduct an auction (the "Auction") to effectuate the Sale.

a. Notice of Sale, Auction, and Sale Hearing: Within two business days after entry of the order approving these Bid Procedures (the "Bid Procedures Order"), the Debtor shall provide the Bid Procedures Order and a notice consistent with L.B.R. 9013-1 by mail upon (a) the Office of the United States Trustee; (b) all of the creditors listed on the Debtor's creditor matrix; (c) all counterparties to any executory contracts or unexpired leases; (d) the Internal Revenue Service; (e) the Securities and Exchange Commission; (f) parties in interest or their counsel who have filed a notice of appearance in the Debtor's bankruptcy case; (g) all known parties that have previously expressed a bona fide interest in purchasing the Assets in the twelve months proceeding the date of the Motion; (h) the Debtor's taxing authorities; (i) all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest on or in the assets the Debtor seeks to sell; and (j) the petitioning creditors in the Debtor's involuntary bankruptcy case number 11-29209-HRT.

b. Date, Time, and Place of Auction: The Auction shall be conducted at the offices of Brownstein Hyatt Farber Schreck, LLP, 410 Seventeenth Street, Suite 2200, Denver, Colorado 80202 on **October 11, 2011 at 10:00 a.m.** prevailing Mountain Time.

c. Date, Time and Place of Sale Hearing: The hearing to approve the Sale (the "Sale Hearing") shall be conducted by the Court on **October 14, 2011 at 9:00 a.m.** prevailing Mountain Time and may be adjourned or rescheduled without notice. At the Sale Hearing the Debtor may seek Court approval of the Successful Bid (as defined below). Unless the Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the proposed sale.

d. Secured Lender's Right to Credit Bid. Fifth Third Bank, the secured lender, shall have the right to credit bid at the Auction up to the full amount of its current secured claim, which as of August 11, 2011 was $17,773,541.47. The Secured Lender is not required to submit a bid prior to the Auction to exercise its right to credit bid.

e. Notice of Successful Bidder. As soon as immediately practicable after the Auction, but no later than one business day after the conclusion of the Auction, the Debtor will file a notice of the results of the Auction with the Court and shall provide such notice to all parties requesting notice of the results of the Auction.

15368\2\1585839.9

EXHIBIT
1

  f. <u>Objection Deadline to Sale Order</u>.  Objections to the relief sought in the motion approving the Sale shall be in writing, filed and served so as to be actually received by the Notice Parties (defined below) no later than **October 13, 2011, at 12:00 p.m.** prevailing Mountain Time.

  g. <u>Data Room</u>.  Any person or entity that wishes to conduct due diligence with respect to the Assets must first deliver to the Debtor an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtor.  The executed confidentiality agreement must be signed and transmitted by the person or entity wishing to become a potential bidder so as to be received by Alliance Management, 1400 Sixteenth Street, Denver, Colorado, 80202, Attention: Alex G. Smith

**B.** **The Bid Deadline and Bid Procedures**

  1. The deadline for a potential bidder to submit a bid to the Debtor shall be **September 30, 2011** (the "<u>Bid Deadline</u>").  Any potential bidder who fails to submit a bid so as to be received in advance of the Bid Deadline shall not be permitted to participate in the Auction, absent consent by the Debtor in its sole discretion.

  2. Before the Bid Deadline, a potential bidder that desires to make a bid shall deliver copies of its bid in writing and executed by an individual or individuals authorized to bind the potential bidder.  Each bid shall be served by courier or e-mail or as otherwise specified by the Debtor.

  3. Absent consent by the Debtor in its sole discretion, the Debtor will only allow bidders at the Auction whose bids for the Assets include the following:

   a. Financials or other information to demonstrate the financial capability to consummate the Sale.

   b. A definitive written and signed agreement that:

    i. Provides for the purchase of substantially all or a significant portion of the Assets in cash.

    ii. Is not conditioned on obtaining financing or the outcome of any unperformed due diligence by the bidder.

    iii. Fully discloses the identity of the bidder.

    iv. Contains written evidence that the bidder has the requisite corporate or similar authority to consummate the proposed Sale.

    v. Identifies any executory contracts ("<u>Contracts</u>") or unexpired leases ("<u>Leases</u>") to be assumed and assigned in connection with the Sale; and

vi. Includes, with respect to the proposed Contracts and Leases, evidence of adequate assurance of performance with respect to such Leases or Contracts.

All bids will be considered, but the Debtor reserves the right to reject any or all bids in its sole discretion. Bids will be evaluated on numerous grounds; however, bids that are unconditional and contemplate sales that may be consummated fully in cash on or immediately after the Sale Hearing are preferred.

The Debtor reserves the right to (i) modify the Bid Procedures at or prior to the Auction if such modification will better promote the goals of the Auction, (ii) impose, at or prior to the Auction, additional customary terms and conditions on the sale of some or all of the Assets and (iii) adjourn or cancel the Auction at the Auction and/or adjourn the Sale Hearing in open court without further notice, all in such a manner that is not materially inconsistent with any prior order of the Bankruptcy Court and the Debtor deems such modifications are consistent with the performance of its fiduciary obligations.

**C.     The Auction**

1. The Auction shall take place at the offices of Brownstein Hyatt Farber Schreck, LLP, 410 Seventeenth Street, Suite 2200, Denver, Colorado 80202 and shall commence on **October 11, 2011 at 10:00 a.m.** prevailing Mountain Time, which is three business days prior to the Sale Hearing.

2. Only potential bidders that submitted a bid and the required materials are eligible to participate at the Auction, unless the Debtor determines in its sole discretion otherwise.

3. The Auction shall be governed by the following procedures, which procedures shall be subject to modification by the Debtor as the Debtor deems necessary to better promote the goals of the Auction and to comply with its fiduciary obligations:

a. The bidders shall appear in person at the Auction, or through a duly authorized representative.

b. The Debtor may notify all other parties that submitted a bid, the bid selected by the Debtor as the highest or otherwise best bid following the Bid Deadline (the "Stalking Horse Bid") by 5:00 p.m. prevailing Mountain Time on the day preceding the start of the Auction.

c. The Auction shall commence with the Debtor confirming the particulars of the Stalking Horse Bid and asking for higher and better offers.

d. The Auction shall continue until there is only one bid (or more than one bid for non-overlapping portions of the Assets that collectively constitute substantially all or a portion of the Assets) that the Debtor determines, subject to Bankruptcy Court approval, is the highest or otherwise best offer or offers that together constitute the highest or otherwise best offer or offers for the Assets from among the bids submitted at the Auction (the "Successful Bid," with the maker of the bid the "Successful Bidder").

The next highest or otherwise best bid will be the "Back-Up Bid" and the maker of the bid will be the "Back-Up Bidder." Prior to the Sale Hearing, or at such time as agreed to by the Debtor and the Successful Bidder, the Successful Bidder and the Debtor shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid were made.

   e. The Debtor reserves the right to (i) determine in its discretion which bid is the highest or otherwise best bid(s), and (ii) reject at any time, without liability, any offer that the Debtor, in its sole discretion, deems to be (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or procedures set forth therein or in the Bid Procedures Order, or (3) contrary to the best interests of the Debtor and its estate.

  4. The Successful Bid(s) submitted at the Auction shall constitute an irrevocable offer and be binding on the Successful Bidder and the Back-Up Bidder from the time the bid is submitted until entry of the Sale Order.

  5. The Debtor intends to sell some or all of the Assets to the Successful Bidder upon the approval of the Successful Bid and, if applicable, the Back-Up Bid(s) by the Court at or after the Sale Hearing. The Debtor's presentation of a particular Successful Bid and Back-Up Bid to the Court for approval does not constitute the Debtor's acceptance of the bid. The Debtor will be deemed to have accepted a bid only when the bid has been approved by the Court at the Sale Hearing pursuant to a written order (the "Sale Order").

**D. Assumption Procedures**

  1. Within one business day after receiving the schedule from each bidder of those executory contracts and unexpired leases it wishes to assume (the "Designated Contracts"), and no later than one business day before the Sale Hearing (subject to adjustment as provided below), the Debtor shall file with the Court and provide to each counterparty to a Contract or Lease set forth on such schedule a notice of assumption, assignment, and cure (the "Cure Notice"). The Cure Notice shall include the proposed purchaser's calculation of the cure amount (the "Cure Amount") for each such Designated Contract.

  2. Any counterparty to a Designated Contract shall file and serve any objections to (i) the proposed assumption and assignment set forth in the Cure Notice and (ii) if applicable, the proposed Cure Amount, no later than one calendar day before the Sale Hearing. Notwithstanding the foregoing, if a Contract or Lease is added to the schedule of Designated Contracts on the date of the Auction, a copy of the applicable Cure Notice shall be served on the counterparty by overnight courier service within one business day of such addition (and in no event less than one business day before the Sale Hearing) and any counterparty may file an objection as aforesaid at any time prior to the Sale Hearing.

  3. At the Sale Hearing, only those Designated Contracts (and the corresponding Cure Amounts) listed on the Cure Notice that have been selected to be assumed by the Successful Bidder at the Auction (the "Assumed Contracts") shall be subject to approval by the

Bankruptcy Court, and the Debtor shall reserve its rights with regard to all other Contracts and Leases. If no objection to the Cure Notice with respect to the Designated Contracts is timely received, (i) the counterparty to an Assumed Contract shall be deemed to have consented to the assumption and assignment of the Assumed Contract to the Successful Bidder and shall be forever barred from asserting any objection with regard to such assumption and assignment, and (ii) the Cure Amount set forth in the Cure Notice shall be controlling, notwithstanding anything to the contrary in any Assumed Contract, or any other document, and the counterparty to an Assumed Contract shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Assumed Contract against the Debtor or the Successful Bidder, or the property of any of them.