**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 11-32656 HRT |
| MOUNTAIN CITY MEAT CO., INC., | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |

---

**OMNIBUS OBJECTION TO THE DEBTOR'S MOTIONS: (1) FOR ENTRY OF CONSENSUAL CASH COLLATERAL ORDER; (2) FOR SALE OF PERISHABLE MEAT INVENTORY; (3) FOR APPROVAL OF BID PROCEDURES, AUCTION AND SALE; (4) TO SET BAR DATE WITH RESPECT TO SECTION 503(b)(9) CLAIMS; (5) FOR JOINT ADMINISTRATION; (6) FOR ASSUMPTION OF ENGAGEMENT AGREEMENT; AND (7) FOR TURNOVER BY THE RECEIVER**

---

Orleans International, Inc., National Beef Packing, Inc. and XL Four Star Beef, Inc. (the "Petitioning Creditors"), by and through their counsel Sender & Wasserman, P.C. and Jacob & Weingarten, P.C., for their Omnibus Objection to the Debtor's Motions: (1) for Entry of Consensual Cash Collateral Order; (2) for Sale of Perishable Meat Inventory; (3) for Approval of Bid Procedures, Auction and Sale; (4) to Set Bar Date with Respect to Section 503(b)(9) Claims; (5) for Joint Administration; (6) for Assumption of Engagement Agreement; and (7) for Turnover by the Receiver, state as follows:

**Background**

1.     On September 24, 2011, the Debtor, acting through Alex Smith as the Receiver and chief restructuring officer (the "Receiver") of the Debtor, filed the instant Chapter 11 case (the "Chapter 11 Case"). On the same day, the Debtor filed 13 motions, the majority of which seek first-day orders.

2.     On August 11, 2011, the Petitioning Creditors filed an Involuntary Chapter 7 petition against the Debtor as a result of, among other reasons, the Debtor: (a) ordering and not paying for in excess of $2,400,000 of meat inventory from the Petitioning Creditors; and (b) issuing checks to the Petitioning Creditors for a portion of the inventory, which checks were refused for payment by Fifth Third Bank (the "Bank").

3.     Also on August 11, 2011, the Bank commenced a case against the Debtor in Denver District Court, Case No. 2011 CV 5635, seeking among other things, the appointment of the Receiver. The order appointing the Receiver was entered just minutes after the filing of the Involuntary Petition.

4.      On September 6, 2011, the Debtor filed its Motion to Dismiss the Involuntary Petition (the "Debtor's Motion to Dismiss") on the grounds that it was filed in bad faith because the Petitioning Creditors were motivated solely by their desire to preserve their claims under section 503(b)((9) of the Bankruptcy Code to have that portion of their claims related to goods sold to the Debtor within 20 days prior to the filing treated as an administrative expense.  Neither the Debtor's Motion to Dismiss nor the subsequent Chapter 11 petition nor the voluminous first day motions claim that the money owed to the Petitioning Creditors is "contingent as to liability or the subject of a bona fide dispute as to liability or amount."  11 U.S.C. 303(b)(1).

5.      On September 22, 2011, the Petitioning Creditors filed their objection to the Debtor's Motion to Dismiss. A hearing has been set on the Debtor's Motion to Dismiss for October 14, 2011.

6.       The filing of a voluntary Chapter 11 by the Debtor was done in an attempt to liquidate the Debtor on an unnecessarily fast-track for the benefit of the Bank with little or no regard for the other creditors of the estate and to wipe out the legitimate section 503(b)(9) claims held by a number of Debtor's suppliers.

7.      The Debtor has inundated the Court and the creditors with a multitude of motions requesting first day orders.  Other than the Motions for the Interim Use of Cash Collateral, Authorizing Sale of Perishable Inventory, Continuing the Utility Service and Continuing the Cash Management System, none of the other Motions should be heard on an emergency, first-day basis.  The Debtor's business is being liquidated and as far as the Petitioning Creditors can tell from the weekly reports filed by the Receiver, much of the perishable, soon-to-be out-of-date inventory has been sold.  This leaves the harder-to-liquidate inventory and the machinery and equipment.   At a minimum, all of the other motions filed should be sent to the creditors with the appropriate notices or, alternatively, should be set for the October 14, 2011, hearing that is on the Court's docket on the Debtor's Motion to Dismiss the Involuntary Petition.

## Relief Requested

### A.   Motion for Entry of Consensual Cash Collateral Order [Docket No. 9]

8.    The Petitioning Creditors understand the need for the Debtor to use cash collateral and do not object to an Order authorizing such use; however, the Petitioning Creditors assert that under the circumstances of the liquidation of the Debtor and pending Involuntary Petition that the protections afforded to the Bank go too far.

9.       In the proposed Agreed Order, recital G states that the Bank "held, and continues to hold, a first-priority perfected security interest in the Pre-Petition Collateral, subject only to senior pre-petition statutory liens, if any." This is contrary to the language contained in paragraph 6 of the Interim Order Annulling the Automatic Stay on a Limited Basis and Excusing Turnover Pending Further Order of the Court and paragraph 7 of the Second Interim Order (collectively, the "Interim Orders Annulling the Stay").  Paragraphs 6 and 7 of the respective Interim Orders provide that:

2

To the extent the Receiver sells inventory of the Debtor which is subject to valid and enforceable liens, security interests or reclamation rights, then such liens, security interests and/or reclamation rights shall attach to the net proceeds resulting from such inventory and shall attach to the net proceeds in the same order, priority and validity as such liens, security interests and/or reclamation rights had in the Debtor's inventory under applicable law on the date such inventory was sold.

The proposed Agreed Order must be revised to reflect the rights of the creditors consistent with the Interim Orders of this Court.

10.     The proposed Agreed Order grants the Bank certain rights, including a super-priority claim pursuant to section 507(b) and a waiver of section 506(c) claims.  To the extent that the Bank is entitled to any rights under section 507(b), such rights are already provided for in section 507(b). The Bank is not entitled to anything beyond that. As such, there is no need for any language in the proposed order referencing section 507(b) or providing for any sort of super priority claim in favor of the Bank.  The instant case is essentially a liquidation case for the benefit of the Bank and a trustee or debtor in possession is entitled to recover from the property securing the Bank's claim the "reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim..." 11 U.S.C. 506(c).  The Bank can reserve its rights, but under the circumstances, there is no justification for granting these rights that arguably adversely affect creditors and a trustee, if one is appointed.

11.     The Petitioning Creditors strenuously object to the time limit (December 30, 2011) contained in Paragraph 18 of the proposed Consensual Order.  First of all, there is absolutely no good reason for such a time limit.  This deadline is inappropriate under the circumstance where the Bank is not advancing new funds but is only allowing the Debtor to use proceeds of the liquidation of its collateral for the benefit of the Bank.  To the extent that the Court disagrees and determines that a deadline is appropriate, the deadline should be much, much later.

12.     The Petitioning Creditors object to the "Carve-Out" for the Debtor's professionals since it elevates their claim over that of the other potential administrative creditors, which is inconsistent with the priority scheme of the Bankruptcy Code and section 506(c).  At a minimum this "Carve-Out" should be at the expense of the Bank for whose benefit the liquidation is being conducted and not as an expense that dilutes what may be available for the creditors.

**B.   Emergency Motion for Sale of Perishable Meat Inventory [Docket No. 8]**

13.     Paragraph 3 of the Proposed Interim Order Authorizing Sale should be revised to contain the same language cited in Paragraph 9 of this Omnibus Objection regarding the preservation of the rights of the other creditors as set forth in the Interim Order Annulling the

Automatic Stay.  Conducting an auction on October 11, 2011 is likewise not enough time to adequately subject the assets to the market.

### C.   Bid Procedures, Auction and Sale [Docket No. 15]

14.      The Petitioning Creditors object to the Debtor's Motion to Establish Bid Procedures for a variety of reasons.  First and foremost, the proposed bid and sale procedures are designed to chill the bidding.  The bids must be submitted no later than September 30, 2011, and bidders who do not submit a bid by that date are precluded from participating in the auction "absent consent by the Debtor in its sole discretion."  Bid Procedures Motion, paragraph B.1.

15.      There is no real emergency to establish the bid procedures and conduct the auction.   The Motion, Notice and bid procedures do not contain any information regarding what is being sold, the minimum bid or an overbid threshold.  The only mention of price is a reference to the Bank's right to credit bid its debt of $17,773,541.47 as of August 11, 2011.  Based upon the Debtor's weekly reports, the Bank's debt has been substantially reduced through the sale of inventory.   Potential bidders need to know what they are buying and the Bank's reserve price.  Simply stating that the Bank has reserved its right to credit bid will chill the bidding.

16.      Without a "stalking horse" bidder and under the short time frames and procedures proposed by the Debtor, the proposed sale is not in the best interests of the creditors or the estate at this time.

### D.  503(b)(9) Bar Date [Docket No. 13]

17.      The Petitioning Creditors object to the Debtor's motion to set a bar date for section 503(b)(9) claims for 14 days after notice is given to the creditors.  The bar date is both unnecessary at this point and violates any notion of due process.  The Debtor, by its own pleadings, acknowledges that the section 503(b)(9) claims are on the order of $4,000,000.   What more does it need to know at this point?  In addition, whether such administrative claims exist at all will depend upon whether the Debtor's Motion to Dismiss is granted and, if it is, there will likely be no section 503(b)(9) claims.  The bar date at this time is entirely unnecessary.  Debtor's proposal to prohibit such claimants from being able to amend such claims is also inappropriate.

### E.   Joint Administration [Docket No. 14]

18.      The Petitioning Creditors do not object to the joint administration of these cases; however, they believe that the cases should be jointly administered for the time being under the involuntary case since it was the first to be filed.   The Petitioning Creditors also want to make certain that any joint administration of the cases does not prejudice the merits of the involuntary petition.

**F.   Assumption of Engagement Agreement [Docket No. 10]**

19.       The Petitioning Creditors object to the assumption of the Receiver's Engagement Agreement without sufficient notice to the creditors.  In addition, the Motion is objectionable because it seeks to indemnify and limit the liability of the Receiver.  Finally, it appears that the Debtor is requesting an order which provides that the Receiver acting as the CRO of the Debtor will not be required to file fee applications for approval by the Bankruptcy Court consistent with those required of other professionals.  The Receiver is a professional and should be required to file fee applications.  This Motion indicates that the Receiver will continue to employ Faegre & Benson LLP as his counsel.  Given that the Debtor is employing BHFS as its counsel, it is unnecessary and totally inappropriate for the Receiver and the Debtor to employ two separate law firms.  This is especially true in this case with its limited resources.

**G.   Turnover [Docket No. 11]**

20.       The Petitioning Creditors do not object to the Receiver's decision to turnover the assets to the bankruptcy estate; however, the Motion goes well beyond that when it also seeks to have certain pre-petition contracts assumed by the Debtor.  At a minimum, the assumption, or as the Debtor's suggest, "honoring" these pre-petition agreements should be sent out with adequate notice for the creditors to make an informed decision on whether they are necessary and proper.

## Conclusion

21.       The Petitioning Creditors assert that at a minimum the Court should maintain the status quo until the Court has ruled upon the Debtor's Motion to Dismiss.  There is very little in this case that requires the Court to enter orders that will potentially adversely affect the rights of the creditors and parties-in-interest.  The Debtor should be required to send out the Motions with sufficient notice for all parties-in-interest to review what is being requested and, if appropriate, file objections.

WHEREFORE, the Petitioning Creditors request that the Court deny Debtor's Motions as indicated herein and grant such other relief as is just and proper.

 Dated: September 27, 2011

                                        Respectfully submitted,

                                        SENDER & WASSERMAN, P.C.

                                        /s/ John B. Wasserman
                                        _____
                                        John B. Wasserman, #10011
                                        1660 Lincoln Street, Suite 2200
                                        Denver, Colorado 80264
                                        Phone: (303) 296-1999
                                        Fax: (303) 296-7600
                                        Email: jwass@sendwass.com

                                        -AND-

                                        JACOB & WEINGARTEN, P.C.
                                        By: Howard S. Sher (P38337)
                                            Michele L. Walton (P70795)
                                        2301 W. Big Beaver Road
                                        Suite 777
                                        Troy, Michigan 48084
                                        (248) 649-1900
                                        *Admitted Pro Hac Vice*
                                        Attorneys for the Petitioning Creditors

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of September, 2011, a true and correct copy of the foregoing **OMNIBUS OBJECTION TO THE DEBTOR'S MOTIONS: (1) FOR ENTRY OF CONSENSUAL CASH COLLATERAL ORDER; (2) FOR SALE OF PERISHABLE MEAT INVENTORY; (3) FOR APPROVAL OF BID PROCEDURES, AUCTION AND SALE; (4) TO SET BAR DATE WITH RESPECT TO SECTION 503(b)(9) CLAIMS; (5) FOR JOINT ADMINISTRATION; (6) FOR ASSUMPTION OF ENGAGEMENT AGREEMENT; AND (7) FOR TURNOVER BY THE RECEIVER** was served via United States mail, postage prepaid, to the following:

Elizabeth K. Flaagan
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203

Daniel J. Garfield
Michael J. Pankow
Heather Schell
410 17th Street, 22nd Floor
Denver, CO 80202

William A. Richey
730 17th Street, Suite 240
Denver, CO 80202

U.S. Trustee
999 18th Street, Suite 1551
Denver, CO 80202

James T. Markus
John F. Young
Markus Williams Young & Zimmerman, LLC
1700 Lincoln Street, Suite 4000
Denver, CO 80203

A.Todd Darwin
PO Drawer 1897
Spartanburg, SC 29304

Milnor H. Senior, III
1700 Lincoln Street, Suite 4100
Denver, CO 90203-4541

Joel Laufer
5290 DTC Parkway, Suite 150
Englewood, CO 80111

David T. Brennan
950 17th Street, Suite 1600
Denver, CO 80202

Alan J. Lipkin
Andrew E. Schwartz
787 Seventh Avenue
New York, NY 10019

William A. Richey
730 17th Street, Suite 240
Denver, CO 80202

*/s/ Rhonda A. Hanshe*
For Sender & Wasserman, P.C.