UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO

| | |
|---|---|
| In re | Bankruptcy Case Nos. 11-29209-HRT, 11-32656-HRT |
| MOUNTAIN CITY MEAT CO., INC. | |
| Debtor. | Jointly Administered Voluntary and Contested Involuntary Cases under Case No. 11-32656-HRT |
| | Chapter 11 |

### NOTICE OF PROPOSED STALKING HORSE BIDDER

PLEASE TAKE NOTICE that in connection with the Motion for (I) An Order Approving (a) Bid Procedures, (b) Notice of Sale, Auction, and Sale Hearing, (c) Assumption Procedures and Related Notices; and (II) An Order Approving the Sale of Substantially All of the Debtor's Assets, (Dkt. #15), filed by Mountain City Meat Co., Inc. (the "Debtor"), the Debtor has entered into an asset purchase agreement (the "Stalking Horse Agreement") with MCM Acquisition Co. (the "Stalking Horse Bidder") for the sale of the Debtor's machinery and equipment.

An unsigned version of the Stalking Horse Agreement is attached hereto as Exhibit 1. The Stalking Horse Agreement is subject to (a) completion of the list of assets to be sold, (b) delivery of the earnest money deposit set forth below, and (c) receipt of certain agreements confirming the Stalking Horse Bidder's financial ability to close.

The following summarizes the material terms set forth in the Stalking Horse Agreement:

    a.    <u>Assets to be Acquired</u>: All of the machinery, equipment, all rolling stock, fork lifts, manlifts, trucks, trailers, inspection tools, gauges, jigs tools, vidmar cabinets with contents, stores, and spare parts on a floor to ceiling, wall to wall basis (the "<u>M&E</u>") located at the Debtor's leased facilities in Denver, Colorado, and Nashville, Tennessee (the "<u>Premises</u>").

    b.    <u>Excluded Assets</u>: Accounts receivable, inventory, leased assets, cash and cash equivalents, trade and brand names, and causes of action.

    c.    <u>Purchase Price</u>: $5,652,000 in cash.

    d.    <u>Earnest Money Deposit</u>: $565,000.

    e.    <u>Break-Up Fee</u>: $100,000 000 plus fees and expenses incurred by the Stalking Horse Bidder in connection with the proposed auction and sale up to a maximum amount of $16,000.

        f.        <u>License to Use the Premises</u>: The Debtor will grant to the Stalking Horse Bidder an exclusive and non-transferable license to use and occupy the Premises through a date equal to 90 days from the date that a final and non-appealable order approving the sale is entered so that the Stalking Horse Bidder may, in its sole and absolute discretion, and at no cost to the Stalking Horse Bidder, conduct a private and/or public sale of the M&E at the Premises.

        g.        <u>Closing Conditions</u>: None.

        h.        <u>Closing</u>: Closing shall occur not later than two days following entry of an order approving the sale of the M&E to the Stalking Horse Bidder.

DATED: October 6, 2011.

        **BROWNSTEIN HYATT FARBER SCHRECK, LLP**

        *s/Michael J. Pankow*
        Michael J. Pankow, #21212
        Daniel J. Garfield, #26054
        Heather E. Schell, #38931
        410 17th Street, Suite 2200
        Denver, Colorado 80202
        Tel: (303) 223-1100
        Fax: (303) 223-1111
        mpankow@bhfs.com
        dgarfield@bhfs.com
        hschell@bhfs.com

        *Attorneys for the Debtor*

## PURCHASE AGREEMENT AND BILL OF SALE

THIS PURCHASE AGREEMENT AND BILL OF SALE ("AGREEMENT") is effectively dated as of October 6, 2011, by and between **MOUNTAIN CITY MEAT CO., INC.,** a Colorado corporation ("SELLER"), and **MCM ACQUISITION CO.** a Delaware corporation ("BUYER").

### RECITALS:

On or about September 24, 2011, SELLER filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code, as amended ("BANKRUPTCY CODE"), with the United States Bankruptcy Court for the District of Colorado ("BANKRUPTCY COURT"). Subject to the approval of the BANKRUPTCY COURT, the SELLER has agreed to sell certain property to the BUYER ("SALE") pursuant to the terms of this AGREEMENT. The SELLER and the BUYER (collectively, "PARTIES") have agreed to execute this AGREEMENT so as to document the terms of the SALE.

NOW, THEREFORE, in consideration of these premises, the terms and conditions set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the PARTIES agree as follows:

Section 1.    Sale Of Assets. Subject to the approval of the BANKRUPTCY COURT, the SELLER agrees to sell, transfer and deliver to the BUYER title in and to all of the personal property of the SELLER that is listed and described on Exhibit "A" attached hereto and made a part hereof (collectively, "ASSETS"), upon the terms and conditions set forth herein. The SALE closing shall occur no later than two business days after the entry by the BANKRUPTCY COURT of an order authorizing the SALE pursuant to the terms of this AGREEMENT ("ORDER"), a copy of which shall be attached hereto and incorporated by reference herein as Exhibit "B", unless the Parties agree to a different date.

Section 2.    "As Is" Transaction. BUYER HEREBY ACKNOWLEDGES AND AGREES THAT, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, SELLER MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO THE ASSETS, THE ENVIRONMENTAL CONDITION OR OTHER MATTER RELATING TO THE PHYSICAL CONDITION OF ANY TANGIBLE PERSONAL PROPERTY OR ANY REAL PROPERTY OR IMPROVEMENTS ("REAL ESTATE") LEASED BY SELLERS, THE ZONING OF ANY SUCH REAL ESTATE, THE VALUE OF THE TRANSFERRED ASSETS (OR ANY PORTION THEREOF), THE TITLE TO THE TRANSFERRED ASSETS (OR ANY PORTION THEREOF). WITHOUT IN ANY WAY LIMITING THE FOREGOING, SELLER HEREBY DISCLAIMS ANY WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AS TO ANY PORTION OF THE ASSETS. BUYER FURTHER ACKNOWLEDGES THAT BUYER HAS CONDUCTED AN INDEPENDENT INSPECTION AND INVESTIGATION OF THE PHYSICAL CONDITION OF THE ASSETS AND OTHER MATTERS RELATING TO OR AFFECTING THE TRANSFERRED ASSETS AS BUYER DEEMED NECESSARY OR APPROPRIATE AND THAT IN PROCEEDING WITH ITS ACQUISITION OF THE TRANSFERRED ASSETS, EXCEPT FOR ANY REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH HEREIN, BUYER IS DOING SO BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS AND INVESTIGATIONS. ACCORDINGLY, BUYER WILL ACCEPT THE ASSETS AT THE CLOSING AND THE OTHER ASSETS AT THE SALE, AS APPLICABLE, "AS IS," "WHERE IS," AND "WITH ALL FAULTS."

Section 3.    Purchase Price & Deposit. The price to be paid by the BUYER to the SELLER for the ASSETS ("PURCHASE PRICE") shall be an amount that is equal to Five Million Six Hundred Fifty Two Thousand Dollars ($5,652,000 USD), which shall be paid by the BUYER to the SELLER upon entry of a final order of the Bankruptcy Court approving (i) this AGREEMENT; and (ii) the sale of the ASSETS to BUYER. BUYER has agreed to tender a deposit in the amount of Five Hundred Sixty Five Thousand Dollars ($565,000 USD) upon mutual execution and delivery of this AGREEMENT, and the deposit will be credited against the Purchase Price.

Section 4.    Location Of Assets. The ASSETS are located on the parcel(s) of real property located at 5905 East 42nd Street in Denver, Colorado (the "DENVER PREMISES") and 2960 Armory Drive in Nashville, Tennessee (the "NASHVILLE PREMISES" and together with the DENVER PREMISES, the "PREMISES"). The SELLER is a tenant of the DENVER PREMISES pursuant to the terms of a lease agreement (the "DENVER

EXHIBIT 1

LEASE") and the term of the DENVER LEASE does not expire until June 30, 2022 (the "DENVER LESS TERM"), and the SELLER is a tenant of the NASHVILLE PREMISES pursuant to the terms of a lease agreement (the "NASHVILLE LEASE") and the term of the NASHVILLE LEASE does not expire until July 31, 2027 (the "NASHVILLE LEASE TERM," and together with the DENVER LEASE TERM, the "LEASE TERM").

Section 5.    Use Of The Premises; Resale Period. Subject to the consent of the landlord of the PREMISES, after the Sale, the SELLER: (a) authorizes the BUYER to enter and use the PREMISES for the purposes of -- (i) storing the ASSETS thereupon, (ii) preparing for and conducting one or more public auction(s) and/or private sale(s) of the ASSETS thereupon (collectively, "RESALE"), and (iii) otherwise exhibiting the ASSETS; (b) shall not charge the BUYER any rent, storage fees, utilities, or any other fees associated with the BUYER's use of the PREMISES in accordance with the terms of this Section; (c) shall provide, at the SELLER's sole expense -- (i) adequate utilities to the PREMISES to allow the BUYER to demonstrate and exhibit the ASSETS to prospective purchasers thereof and to conduct the RESALE, and (ii) the same level of security that is currently being provided for the ASSETS; and (d) if applicable, shall give the BUYER immediate written notice of any post-petition default by the SELLER under the LEASE -- if the LEASE TERM expires, or such default could result in the termination of the SELLER's right to occupy the PREMISES, prior to the expiration of the below-defined "RESALE PERIOD."  Notwithstanding any of the terms of this Section to the contrary, the SELLER's obligations to the BUYER under this Section shall: (A) commence upon the entry of the ORDER; and (B) terminate, unless otherwise extended by the PARTIES, on the earlier to occur of the below-defined "TERMINATION DATE" or that date which is ninety (90) days following the issuance of the ORDER ("RESALE PERIOD").

Section 6.    Term Of Agreement; Expiration Of Resale Period.  With the exception of the agreements of the PARTIES described in Sections 13 and 14 hereof, the rights and obligations of the PARTIES under this AGREEMENT shall terminate upon the earlier of the following ("TERMINATION DATE") -- (i) the completion of the RESALE of all of the ASSETS by the BUYER and the removal of the sold ASSETS following the RESALE (which, consistent with the terms of the immediately preceding Section hereof, shall take place prior to the 90th day following the issuance of the ORDER), or (ii) the expiration of the RESALE PERIOD. On or before the TERMINATION DATE, the BUYER shall remove all unsold ASSETS from the PREMISES and shall repair any damages to the PREMISES that are caused by the removal of the ASSETS from the PREMISES or are otherwise the direct result of the BUYER's negligence or misconduct.

Section 7.    Liability And Workers' Compensation Insurance.  The BUYER shall provide the SELLER with evidence that the BUYER has: (a) public liability and property damage insurance -- (i) insuring the BUYER against loss as a result of personal injury or property damage in connection with the ASSETS, the PREMISES and any RESALE, (ii) with limits of not less than Five Million Dollars ($5,000,000.00) in the aggregate as to personal injury, and (iii) naming the SELLER as an additional insured; and (b) workers' compensation insurance with limits of coverage that comply with applicable laws and regulations. The BUYER shall maintain the insurance described in this Section until the TERMINATION DATE.

Section 8.    Casualty Insurance; Pre-Resale Removal; Etc..  Since the risk of loss or damage to the ASSETS by fire or other casualty, or by theft or vandalism, is assumed by the BUYER following the execution and delivery of this AGREEMENT by the PARTIES, the BUYER is responsible for obtaining and thereafter maintaining a policy or policies of all-risk or fire and extended coverage casualty insurance, and vandalism and malicious mischief, for the ASSETS. In the event that, prior to the RESALE of all of the ASSETS, all or any portion of the ASSETS shall be lost or damaged by fire or other casualty, or by theft or vandalism, the BUYER shall be entitled to receive the insurance proceeds therefrom (provided the BUYER has paid the SELLER the PURCHASE PRICE pursuant to the terms of Section 2 of this AGREEMENT), and the SELLER hereby waives any right that the SELLER may otherwise have to participate in or receive such insurance proceeds, which right the SELLER hereby assigns to the BUYER. Notwithstanding the terms of this Section to the contrary, in the event that, prior to the RESALE of all of the ASSETS, the SELLER is responsible for the BUYER not being able to sell one or more of the ASSETS at the RESALE -- the SELLER shall refund to the BUYER a portion of the PURCHASE PRICE in an amount equal to the aggregate orderly liquidation value of such ASSETS, as evidenced by the orderly liquidation values that the BUYER attributed to such ASSETS prior to entering into this AGREEMENT.

Section 9.    Sale Free & Clear of Liens.  The ORDER shall provide that the SALE of the ASSETS will be made free and clear of any claim made by any alleged creditor for the payment of sums due in connection with any security interests or liens associated with any of the ASSETS (collectively, "CLAIM").

Section 10.  **Representations Of The Seller.**  The SELLER represents and warrants to the BUYER that:

(a) at the time of the SALE, the SELLER -- (i) shall have the authority and has performed all acts necessary to sell, transfer and deliver the ASSETS to the BUYER, subject to the approval of the BANKRUPTCY COURT, and (ii) shall receive, on or before the time of the SALE, the authorization of the BANKRUPTCY COURT to sell the ASSETS pursuant to Sections 363(b) and 363(f) of the BANKRUPTCY CODE, and/or such other applicable law, free and clear of all liens;

(b) no brokerage fees are due and owing in connection with the SALE;

(c) the person executing this AGREEMENT on behalf of the SELLER is duly authorized to do so; and

(d) subject to the approval of the BANKRUPTCY COURT, as evidenced by the ORDER, the terms of this AGREEMENT are binding upon and enforceable against the SELLER.

Section 11.  **Representations Of The Buyer.**  The BUYER represents and warrants to the SELLER that:

(a) the SELLER shall not be responsible for any -- (i) costs or expenses incurred by the BUYER, or (ii) brokerage fees that become due and owing -- in connection with any RESALE, unless the SELLER enters into a written agreement to the contrary or the terms of this AGREEMENT expressly provide otherwise;

(b) all necessary authority to purchase the ASSETS has been obtained by the BUYER;

(c) the person executing this AGREEMENT on behalf of the BUYER is duly authorized to do so; and

(d) the terms of this AGREEMENT are binding upon and enforceable against the BUYER.

Section 12.  **Assignment Of Service Agreements, Manuals, Etc..**  To the extent allowable by law, the SELLER shall assign to the BUYER at the SALE, without additional consideration from the BUYER, any and all service agreements, warranties, operating agreements, maintenance agreements, manuals, plans, and all similar and other documents relating to the ASSETS or the SALE which are in the possession or under the control of the SELLER (collectively, "SERVICE AGREEMENTS"). Copies of the SERVICE AGREEMENTS shall be delivered to the BUYER at the time of the execution of this AGREEMENT, unless otherwise agreed to by the PARTIES in writing.

Section 13.  **Advertising; Compliance With Laws.**  To the extent allowable by law, the SELLER hereby authorizes the BUYER to use the SELLER's name, without additional consideration from the BUYER, in promotional materials pertaining to the RESALE.  SELLER hereby grants BUYER a non-exclusive license to use its Trademark and/or Logo throughout the world, in all media now or hereafter known, including without limitation on and in advertising or promotional materials.

Section 14.  **Indemnifications By The Seller.**  The SELLER hereby indemnifies, defends and agrees to hold harmless the BUYER and the BUYER's officers, agents and employees from and against any and all claims, demands, liabilities, judgments, damages, settlements, costs and expenses (including but not limited to court costs and attorneys' fees) that may be sustained or incurred by the BUYER as a result of:

(a) any default by the SELLER under the LEASE;

(b) any acts or omissions of the SELLER that result in -- (i) personal or property injury incurred at the PREMISES, (ii) a violation of any governmental statute, ordinance or code related to the

ASSETS or the PREMISES, or (iii) a violation of any security interest, license agreement, patent or other encumbrance restricting the SALE, any RESALE, or the use of the ASSETS;

(c) any claim made by a third party for commissions allegedly due and owing in connection with the SALE;

(d) any material misrepresentation of the representations more fully described in Section 9 hereof.

Section 15. <u>Indemnifications By The Buyer</u>. The BUYER hereby indemnifies, defends and agrees to hold harmless the SELLER and the SELLER's officers, agents and employees from and against any and all claims, demands, liabilities, judgements, damages, settlements, costs and expenses (including but not limited to court costs and attorneys' fees) that may be sustained or incurred by the SELLER as a result of:

(a) any acts or omissions of the BUYER that result in -- (i) personal or property injury incurred at the PREMISES, or (ii) a violation of any governmental statute, ordinance or code related to the ASSETS or the PREMISES;

(b) any claim made by a third party for commissions allegedly due and owing in connection with the RESALE -- unless the SELLER enters into a written agreement to the contrary; or

(c) any material misrepresentation of the representations more fully described in Section 10 hereof.

Section 16. <u>Dispute Resolution</u>. Any controversy or claim arising out of or related to this AGREEMENT, or any alleged breach of the terms hereof, shall be adjudicated by the BANKRUPTCY COURT.

Section 17. <u>Payment Of Court Costs And Fees</u>. All costs and fees incurred by both PARTIES in connection with a controversy or claim arising out of or related to this AGREEMENT, or any alleged breach of the terms hereof, including but not limited to their respective attorneys' fees and the fees to be paid to the BANKRUPTCY COURT, shall be paid by the PARTY who is deemed by the BANKRUPTCY COURT to be in default under the terms of this AGREEMENT; unless the BANKRUPTCY COURT apportions the costs and fees incurred in connection with such controversy or claim in a different manner or proportion.

Section 18. <u>Binding Obligation; Assignment</u>. This AGREEMENT shall be binding upon the PARTIES and their respective successors and assigns. The BUYER may assign its interest in this AGREEMENT without the prior written consent of the SELLER; provided, however, that the BUYER shall remain fully liable to pay the SELLER the PURCHASE PRICE pursuant to the terms of Section 2 of this AGREEMENT if the BUYER's assignee fails to do so.

Section 19. <u>Final Agreement</u>. This AGREEMENT -- and any and all (i) exhibits that are attached hereto and made a part hereof, and (ii) side agreements, letter agreements, and amendments (if any) that are executed by the SELLER and the BUYER in furtherance of this AGREEMENT -- contains the final and entire agreement and understanding of the PARTIES, and any terms and conditions not set forth in this AGREEMENT (or in such exhibits, side letters, letter agreements, and amendments) are not a part of this AGREEMENT and the understanding of the PARTIES. This AGREEMENT may be amended or altered only in writing signed by the PARTY to be bound by the change or alteration.

Section 20. <u>Time</u>. Time is strictly of the essence of this AGREEMENT.

Section 21. <u>Number, Gender, And Captions</u>. As used herein, the singular shall include the plural and the plural may refer to only the singular. The use of any gender shall be applicable to all genders. The captions contained herein are for purposes of convenience only and are not a part of this AGREEMENT.

Section 22. <u>Partial Invalidity</u>. If any term, covenant or condition of this AGREEMENT or its application to any person or circumstances shall be invalid or unenforceable, the remainder of this AGREEMENT, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable shall not be affected, and each term shall be valid and enforceable to the fullest extent permitted by law.

15368\6\1594028.4                                4

Section 23. Force Majeure. Notwithstanding any of the terms of this AGREEMENT to the contrary, the BUYER shall not be deemed in default with respect to the performance of any of the terms, covenants and conditions of this AGREEMENT, and the RESALE PERIOD and the TERMINATION DATE shall be extended accordingly, if the BUYER -- (i) is unable to conduct the SALE, (ii) determines that the SALE should be postponed, or (iii) otherwise is unable to fulfill its obligations hereunder -- due to or because of any: (a) strike or lockout; (b) civil commotion, war-like operation, invasion, rebellion, terrorist act, hostilities, military or usurped power, sabotage, or governmental regulation or control; or (c) hurricane, tornado, flood, mudslide, fire, act of God, or any other cause that is beyond the control of the BUYER.

Section 24. Assistance In Proceedings. SELLER shall cooperate with BUYER and its counsel in the contest or defense of, and make available its personnel and provide any testimony and access to its books and records in connection with, any proceeding involving or relating to the SALE.

Section 25. Further Assurances. The PARTIES shall cooperate reasonably with each other and with their respective representatives in connection with any steps required to be taken as part of their respective obligations under this Agreement, and shall (a) furnish upon request to each other such further information, (b) execute and deliver to each other such other documents, and (c) do such other acts and things, all as the other party may reasonably request for the purpose of carrying out the intent of this Agreement.

Section 26. Jurisdiction. Any suit, action or proceeding between the PARTIES relating to this Agreement or to any agreement, document or instrument delivered pursuant hereto or in connection with the transactions contemplated hereby, or in any other manner arising out of or relating to the transactions contemplated by or referenced in this AGREEMENT shall be commenced and maintained exclusively in the BANKRUPTCY COURT. The parties hereto submit themselves unconditionally and irrevocably to the personal jurisdiction of such court.

Section 27. Notices. Any notice required or permitted by or in connection with this AGREEMENT, without implying the obligation to provide any such notice, shall be in writing and shall be made by facsimile (confirmed on the date the facsimile is sent by one of the other methods of giving notice provided for in this Section) or by hand delivery, by Federal Express, or other similar overnight delivery service, or by certified mail, unrestricted delivery, return receipt requested, postage prepaid, addressed to the respective PARTIES at the appropriate address set forth below or to such other address as may be hereafter specified by written notice by the respective PARTIES. If notice is tendered pursuant to the provisions of this Section and is refused by the intended recipient thereof, the notice, nevertheless, shall be considered to have been given.

If to the SELLER:

Alex Smith
Alliance Management
Market Square Center, Ste. 400
1400 16th St.
Denver, CO 80202
Fax. No.: 720-932-8107

with a copy to:

Michael J. Pankow
Daniel J. Garfield
Brownstein Hyatt Farber Schreck, LLP
410 17th St., 22nd Fl.
Denver, CO 80202
Fax No.: 303-223-1111

15368\6\1594028.4

5

If to the BUYER:

>**MCM Acquisition Co.**
>904 Buena Vista
>San Clemente, CA 92672
>Attention: Maria
>Fax. No.: (213) 383-5985

[Signatures begin on the next page.]

15368\6\1594028.4

6

IN WITNESS WHEREOF, the SELLER and the BUYER execute this AGREEMENT as of the date first above written (notwithstanding the actual date of execution and delivery hereof), with the specific intention that this AGREEMENT constitutes a document under seal. This AGREEMENT may be executed in counterparts and may be delivered via facsimile transmission.

**The SELLER:**

**MOUNTAIN CITY MEAT CO., INC.**

By: _____
Name: _____
Title: _____


**The BUYER:**

**MCM ACQUISITION CO.**
A Delaware Corporation

By: _____
Name: _____
Title: _____

**EXHIBIT "A"**

DESCRIPTION OF THE ASSETS SUBJECT TO
THE PURCHASE AGREEMENT AND BILL OF SALE TO WHICH
THIS EXHIBIT IS ATTACHED AND MADE A PART OF ("AGREEMENT"):

    As used throughout this AGREEMENT, the term "ASSETS" means, collectively, all of the machinery, equipment and other personal property that are located on the PREMISES as of the effective date of this AGREEMENT, including but not limited to those items more fully described on the schedule of assets (if any) which is attached hereto and made a part hereof.

    Notwithstanding the terms of the immediately preceding paragraph to the contrary, the term "ASSETS" specifically excludes the following which are not subject to the SALE or the terms of this AGREEMENT:

_____
_____
_____
_____
_____
_____
_____
_____.

**EXHIBIT "B"**

**ORDER**

[to be attached hereto]

15368\6\1594028.4

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of October, 2011, a true and correct copy of the **NOTICE OF STALKING HORSE BIDDER** was served via U.S. Mail, postage pre-paid, and properly addressed to the following:

Alison Goldenberg
U.S. Trustee
999 18th Street, Suite 1551
Denver, CO 80202

John B. Wasserman
Sender & Wasserman, P.C.
1660 Lincoln St., Suite 2200
Denver, CO 80264

James T. Markus
John F. Young
Markus Williams Young & Zimmermann,
1700 Lincoln Street, Suite 4000
Denver, CO 80203

Elizabeth A. Flaagan
Faegre & Benson LLP
1700 Lincoln St., Suite 3200
Denver, CO 80203

William A. Richey
Jeffrey A. Weinman
Weinman & Associates, P.C.
730 17th Street, Suite 240
Denver, CO 80202-3506

Brent R. Cohen
Rothgerber Johnson & Lyons, LLP
One Tabor Center
1200 17th Street, Suite 3000
Denver, CO 80202-5855

Gil Geldreich
Tennessee Department of Labor &
Workforce Dev-Boiler/Elevator Div.
PO Box 20207
Nashville, Tennessee 37202-0207

John C. Smiley, #16210
Lindquist & Vennum P.L.L.P.
600 17th Street, Suite 1800 South
Denver, CO 80202-5441

Darrell G. Waas
Patricia C. Campbell
Waas Campbell Rivera Johnson &
Velasquez LLP
1350 Seventeenth St., Suite 450
Denver, CO 80202

Kimberly H. Tyson
Ireland, Stapleton, Pryor & Pascoe, PC
1675 Broadway, Suite 2600
Denver, CO 80202

Joshua W. Wolfshohl
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002

Air Liquide Industrial U.S. LP
2700 Post Oak Boulevard
Houston, Texas 77056
Attention: Gwendolyn Young Smithheart

Joel Laufer
5290 DTC Parkway, Suite 150
Englewood, CO 80111

A. Todd Darwin
PO Drawer 1897
Spartanburg, SC 29304

Andrew E. Schwartz
Alan J. Lipkin
Willkie Farr & Gallagher LLP
787 Seventh Ave.
New York, NY 10019

15368\6\1593927.2

| | |
|---|---|
| Christopher J. Redmond<br>Christopher Miles<br>Husch Blackwell LLP<br>4801 Main Street, Suite 1000<br>Kansas City, MO 64112 | David T. Brennan<br>950 17th Street, Suite 1600<br>Denver, CO 80202 |
| Milnor H. Senior, III<br>Holme Robert & Owens<br>1700 Lincoln St. , Ste. 4100<br>Denver, CO 80203-4541 | Robert G Hanseman<br>1900 Kettering Tower<br>Dayton, OH 45402 |
| Howard S. Sher<br>Michele L. Walton<br>2301 W. Big Beaver Rd., Suite 777<br>Troy, MI 48084-3330 | |

            *s/Connie Windholz*
Connie Windholz, Paralegal