## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| In re | |
| | Bankruptcy Case Nos. 11-29209-HRT, |
| MOUNTAIN CITY MEAT CO., INC. | 11-32656-HRT |
| | |
| Debtor. | Jointly Administered Voluntary and Contested |
| | Involuntary Cases under |
| | Case No. 11-32656-HRT |
| | |
| | Chapter 11 |

## NOTICE OF REVISED BID PROCEDURES AND
## REVISED PROPOSED BID PROCEDURES ORDER

PLEASE TAKE NOTICE that in connection with the Motion for (I) An Order Approving (a) Bid Procedures, (b) Notice of Sale, Auction, and Sale Hearing, (c) Assumption Procedures and Related Notices; and (II) An Order Approving the Sale of Substantially All of the Debtor's Assets, (the "Motion," Dkt. #15), filed by Mountain City Meat Co., Inc. (the "Debtor"), the Debtor is submitting the following:

1.      A revised version of the proposed bidding procedures (the "Revised Bid Procedures") for the sale of substantially all or any portion of the Debtor's assets (the "Assets"), attached hereto as Exhibit 1;

2.      A redline of the Revised Bid Procedures, compared to the proposed bid procedures filed with the Motion, attached hereto as Exhibit 2;

3.      A revised proposed order approving the Revised Bid Procedures (the "Revised Order"), attached hereto as Exhibit 3; and

4.      A redline of the Revised Order, compared to the proposed order filed with the Motion, attached hereto as Exhibit 4.

15368\6\1594580.2

DATED: October 6, 2011.

**BROWNSTEIN HYATT FARBER
SCHRECK, LLP**

_____s/Daniel J. Garfield_____
Michael J. Pankow, #21212
Daniel J. Garfield, #26054
Heather E. Schell, #38931
410 17th Street, Suite 2200
Denver, Colorado  80202
Tel:  (303) 223-1100
Fax:  (303) 223-1111
mpankow@bhfs.com
dgarfield@bhfs.com
hschell@bhfs.com

*Attorneys for the Debtor*

## SALE NOTICE, BID PROCEDURES, AUCTION AND RELATED DEADLINES

Set forth below are the bidding procedures (the "Bid Procedures") to be employed with respect to the selection of the highest or otherwise best bid(s) for all or any portion of the assets (the "Assets") of Mountain City Meat Co., Inc. (the "Debtor"). The Debtor is offering for sale its Assets and any portion of the Assets. Except as otherwise provided in definitive documentation with respect to the sale of the Assets (the "Sale"), all of the Debtor's rights, title and interest in and to the Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon in accordance with section 363 of title 11 of the United States Code (the "Bankruptcy Code"). As set forth in more detail below, the Debtor will conduct an auction (the "Auction") to effectuate the Sale.

### A.  Overview of Notice Procedures

1.  <u>Notice of Sale, Auction, and Sale Hearing</u>: Within two business days after entry of the order approving these Bid Procedures (the "Bid Procedures Order"), the Debtor shall provide the Bid Procedures Order and a notice consistent with L.B.R. 9013-1 by mail upon (a) the Office of the United States Trustee; (b) all of the creditors listed on the Debtor's creditor matrix; (c) all counterparties to any executory contracts or unexpired leases; (d) the Internal Revenue Service; (e) the Securities and Exchange Commission; (f) parties in interest or their counsel who have filed a notice of appearance in the Debtor's bankruptcy case; (g) all known parties that have previously expressed a bona fide interest in purchasing the Assets; (h) the Debtor's taxing authorities; (i) all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest on or in the Assets; and (j) counsel for the petitioning creditors in the Debtor's involuntary bankruptcy, case number 11-29209-HRT (the "Petitioning Creditors").

2.  <u>Date, Time, and Place of Auction</u>: The Auction shall be conducted at the offices of Brownstein Hyatt Farber Schreck, LLP, 410 Seventeenth Street, Suite 2200, Denver, Colorado 80202, on **October 19, 2011 at 10:00 a.m.** prevailing Mountain Time.

3.  <u>Date, Time and Place of Sale Hearing</u>: The hearing to approve the Sale (the "Sale Hearing") shall be conducted by the Court on **October 21, 2011 at 9:00 a.m.** prevailing Mountain Time and may be adjourned or rescheduled without notice. At the Sale Hearing the Debtor may seek Court approval of the Successful Bid (as defined below). Unless the Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the proposed sale.

4.  <u>Secured Lender's Right to Credit Bid</u>. Fifth Third Bank (the "Secured Lender") shall have the right to credit bid at the Auction up to the full amount of its current secured claim.

5.  <u>Notice of Successful Bidder</u>. As soon as immediately practicable after the Auction, but no later than one business day after the conclusion of the Auction, the Debtor shall file a notice of the results of the Auction with the Court and shall provide such notice to all parties requesting notice of the results of the Auction.

6.  <u>Objection Deadline to Sale Order</u>. Objections to the relief sought in the motion approving the Sale shall be in writing, filed and served no later than **October 19, 2011**.

**EXHIBIT 1**

7.     Data Room.  Any person or entity that wishes to conduct due diligence with respect to the Assets must first deliver to the Debtor an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtor.  The executed confidentiality agreement must be signed and transmitted by the person or entity wishing to become a potential bidder so as to be received by Alliance Management, 1400 Sixteenth Street, Denver, Colorado, 80202, Attention: Alex G. Smith

## B.     The Bid Procedures

1.     Stalking Horse Agreement & Break-up Fee.  The Debtor shall enter into and file with the Court a "stalking horse" agreement (the "Stalking Horse Agreement") governing the purchase of the Assets by MCM Acquisition Co. or its designee (the "Stalking Horse Bidder"). The Stalking Horse Agreement generally provides for the sale of the Debtor's machinery and equipment, and further provides for a break-up fee of $100,000 plus fees and expenses incurred by the Stalking Horse Bidder in connection with the Auction and Sale up to a maximum amount of $16,000 to be provided to the Stalking Horse Bidder in the event that the Stalking Horse Bidder is not the Successful Bidder (the "Break-Up Fee").  The amount of the Break-Up Fee shall be considered by the Debtor in determining the highest or otherwise best bid and the net value that the Debtor and its estate will realize at any Auction.

2.     Qualified Bidder.  Absent consent by the Debtor in its sole discretion, a "Qualified Bidder" is a potential bidder that on or before **October 17, 2011 at 5:00 p.m.** prevailing Mountain Time (the "Bid Deadline"):

a.     Submits financial reports or other information to the Debtor that demonstrate the financial capability to consummate the Sale;

b.     Provides to the Debtor an earnest money deposit in the amount of $565,000 (the "Earnest Money Deposit") in the form of a cashier's check, wire transfer, or other certified funds made payable to the Debtor.  Earnest Money Deposits will be nonrefundable if the bidder is determined to be the Successful Bidder (as defined below) and such bidder fails to purchase the Assets but will otherwise be refundable if the bidder is not the Successful Bidder;

c.     Fully discloses the identity of such bidder;

d.     Provides written evidence that the bidder has the requisite corporate or similar authority to consummate the proposed Sale;

e.     Identifies any executory contracts ("Contracts") or unexpired leases ("Leases") to be assumed and assigned in connection with the Sale;

f.     Includes, with respect to the proposed Contracts and Leases, evidence of adequate assurance of performance with respect to such Leases or Contracts;

g.     Provides a signed contract substantially in the form of the Stalking Horse Agreement, marked to show any changes made thereto, which agreement must (1) provide for the purchase of substantially all or a significant portion of the Assets in cash

(2) not have conditions to close that are not present in the Stalking Horse Agreement, (3) not request or entitle the bidder to any break-up fee, expense reimbursement or similar type of payment; and (4) not be conditioned on obtaining financing or the outcome of any unperformed due diligence by the bidder;

   h. Provides written consent for the sharing of information provided to the Debtor with creditors and interested parties in this case; and

   i. Agrees to close the proposed sale within two business days following the entry of the Court's order approving the Sale.

The Stalking Horse Bidder and the Secured Lender are each a Qualified Bidder for all purposes hereunder. Only Qualified Bidders that meet the requirements set forth above may participate in the Auction; provided, however, that the Debtor reserves the right to consider or reject any or all submissions in its sole discretion. Bids will be evaluated on numerous grounds. The Debtor will consult with the Secured Lender, the Official Committee of Unsecured Creditors and the Petitioning Creditors regarding the Qualified Bidders.

   3. <u>Reservation of Rights</u>. The Debtor reserves the right to (i) modify the Bid Procedures at or prior to the Auction if such modification will better promote the goals of the Auction, (ii) impose, at or prior to the Auction, additional customary terms and conditions on the sale of some or all of the Assets and (iii) adjourn or cancel the Auction at the Auction and/or adjourn the Sale Hearing in open court without further notice, all in such a manner that is not materially inconsistent with any prior order of the Bankruptcy Court and the Debtor deems such modifications are consistent with the performance of its fiduciary obligations.

**C. The Auction**

   1. If there is at least one Qualified Bidder other than the Stalking Horse Bidder by the Bid Deadline, the Auction with respect to the Assets shall take place at the offices of Brownstein Hyatt Farber Schreck, LLP, 410 Seventeenth Street, Suite 2200, Denver, Colorado 80202, and shall commence on **October 19, 2011 at 10:00 a.m.** prevailing Mountain Time.

   2. If there is no Qualified Bidder other than the Stalking Horse Bidder the Bid Deadline, then the Auction will not be held and, pursuant to the Stalking Horse Agreement, the Stalking Horse Bidder shall purchase, acquire and accept from the Debtor, and the Debtor shall sell, transfer, assign, convey and deliver to the Stalking Horse Bidder (or its designated affiliate or affiliates) all of the Debtor's right, title and interest in, to and under the machinery and equipment, free and clear of all liens to the extent permissible under Bankruptcy Code § 363(f) free and clear of any claims or interests the Debtor may have.

   3. Only Qualified Bidders are eligible to participate at the Auction, unless the Debtor determines in its sole discretion otherwise.

   4. The Auction shall be governed by the following procedures, which procedures shall be subject to modification by the Debtor as the Debtor deems necessary to better promote the goals of the Auction and to comply with its fiduciary obligations:

a.      The bidders shall appear in person at the Auction, or through a duly authorized representative.

b.      The Auction shall commence with the Debtor confirming the terms of the bid set forth in the Stalking Horse Agreement (the "Stalking Horse Bid").

c.      Bidding shall continue with a bid in the amount of at least $5,918,000 (which is equal to the amount of the Stalking Horse Bid, the Break-Up Fee, and an initial incremental increase in the amount of $150,000) and shall continue in increments of $50,000 or more thereafter until there is a Successful Bid (as defined below) and a Back-up Bid (as defined below).

d.      All Qualified Bidders shall have the right to submit additional bids and make additional modifications to their respective modified purchase agreements, as applicable, at the Auction to improve such bids.

e.      The Auction may include individual negotiations with the Qualified Bidders and/or open bidding in the presence of all other Qualified Bidders.

f.      The Auction shall continue until there is only one bid (or more than one bid for non-overlapping portions of the Assets that collectively constitute substantially all or a portion of the Assets) that the Debtor determines, subject to Bankruptcy Court approval, is the highest or otherwise best offer or offers that together constitute the highest or otherwise best offer or offers for the Assets from among the bids submitted at the Auction (the "Successful Bid," with the maker of the bid the "Successful Bidder"). The next highest or otherwise best bid will be the "Back-Up Bid" and the maker of the bid will be the "Back-Up Bidder." Prior to the Sale Hearing, or at such time as agreed to by the Debtor and the Successful Bidder(s), the Successful Bidder(s) and the Debtor shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid(s) were made.

g.      The Debtor reserves the right to (i) determine in its discretion which bid is the highest or otherwise best bid(s), and (ii) reject at any time, without liability, any offer that the Debtor, in its sole discretion, deems to be (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or procedures set forth therein or in the Bid Procedures Order, or (3) contrary to the best interests of the Debtor and its estate.

5.      The Successful Bid(s) and Back-Up Bid(s) submitted at the Auction shall constitute irrevocable offers and be binding on the Successful Bidder(s) and the Back-Up Bidder(s) from the time the bids are submitted until 45 days after entry of the Sale Order (defined below).  If the Successful Bidder fails to close within 14 days after entry of the Sale Order, then such bidder shall be deemed to have consented to the closing of the sale of the Assets to the Back-Up Bidder and shall be deemed to have forfeited its Earnest Money Deposit to the estate; provided that the Debtor, in its discretion, may extend the 14 day closing requirement if the Debtor believes it is in the best interest to do so.

6.      The Debtor intends to sell some or all of the Assets to the Successful Bidder(s) upon the approval of the Successful Bid(s) and, if applicable, the Back-Up Bid(s) by the Court at or after the Sale Hearing.  The Debtor's presentation of a particular Successful Bid and Back-Up Bid to the Court for approval does not constitute the Debtor's acceptance of the bid.  The Debtor will be deemed to have accepted a bid only when the bid has been approved by the Court at the Sale Hearing pursuant to a written order (the "Sale Order").

**D.      Assumption Procedures**

1.      At the close of the Auction, the Successful Bidder(s) and the Back-Up Bidder(s) shall provide a schedule to the Debtor of those executory contracts and unexpired leases each wishes to assume (the "Designated Contracts").

2.      The Debtor does not intend to seek approval of assumption and assignment of any Designated Contracts at the Sale Hearing.  Instead, the sale agreement between the Successful Bidder (or the Back-Up Bidder(s)) shall provide that the parties shall work together after sale closing to provide for the assumption and assignment of any Designated Contracts, and the Debtor shall file any such motions post-sale closing.

**E.      Sale of Excluded Assets**

Notwithstanding Sections B and C above, the Debtor will consider bids for a portion or all of its assets that are not contemplated to be sold under the Stalking Horse Agreement, including the Debtor's accounts receivable, inventory, leased assets, cash and cash equivalents, trade and brand names, and causes of action (the "Excluded Assets").  To the extent the Excluded Assets are not included in the Successful Bid(s) or Back-up Bid(s), the Debtor shall use the time after the Auction to engage in discussions with potential bidders for the Excluded Assets and enter into purchase agreements with such bidders for the sale of some or all of the Excluded Assets, subject to final approval by the Court at the Sale Hearing.

## SALE NOTICE, BID PROCEDURES, AUCTION AND RELATED DEADLINES

Set forth below are the bidding procedures (the "Bid Procedures") to be employed with respect to the selection of the highest or otherwise best bid(s) for all or any portion of the assets (the "Assets") of Mountain City Meat Co., Inc.( (the "Debtor").  The Debtor is offering for sale its Assets and any portion of the Assets.  Except as otherwise provided in definitive documentation with respect to the sale of the Assets (the "Sale"), all of the Debtor's rights, title and interest in and to the Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon in accordance with section 363 of title 11 of the United States Code (the "Bankruptcy Code").  As set forth in more detail below, the ~~Debtors~~**Debtor** will conduct an auction (the "Auction") to effectuate the Sale.

## A.   Overview of Notice Procedures

**1.**   ~~a.~~ Notice of Sale, Auction, and Sale Hearing:  Within two business days after entry of the order approving these Bid Procedures (the "Bid Procedures Order"), the Debtor shall provide the Bid Procedures Order and a notice consistent with L.B.R. 9013-1 by mail upon (a) the Office of the United States Trustee; (b) all of the creditors listed on the Debtor's creditor matrix; (c) all counterparties to any executory contracts or unexpired leases; (d) the Internal Revenue Service; (e) the Securities and Exchange Commission; (f) parties in interest or their counsel who have filed a notice of appearance in the Debtor's bankruptcy case; (g) all known parties that have previously expressed a bona fide interest in purchasing the Assets ~~in the twelve months proceeding the date of the Motion~~; (h) the Debtor's taxing authorities; (i) all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest on or in the ~~assets the Debtor seeks to sell~~**Assets**; and (j) **counsel for** the petitioning creditors in the Debtor's involuntary bankruptcy, case number 11-29209-HRT **(the "Petitioning Creditors")**.

**2.**   ~~b.~~ Date, Time, and Place of Auction:  The Auction shall be conducted at the offices of Brownstein Hyatt Farber Schreck, LLP, 410 Seventeenth Street, Suite 2200, Denver, Colorado ~~80202~~**80202,** on **October ~~11,~~19, 2011 at 10:00 a.m.** prevailing Mountain Time.

**3.**   ~~c.~~ Date, Time and Place of Sale Hearing:  The hearing to approve the Sale (the "Sale Hearing") shall be conducted by the Court on **October ~~14,~~21, 2011 at 9:00 a.m.** prevailing Mountain Time and may be adjourned or rescheduled without notice.  At the Sale Hearing the Debtor may seek Court approval of the Successful Bid (as defined below).  Unless the Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the proposed sale.

**4.**   ~~d.~~ Secured Lender's Right to Credit Bid.  Fifth Third Bank, ~~(the secured lender,~~**("Secured Lender")** shall have the right to credit bid at the Auction up to the full amount of its current secured claim~~, which as of August 11, 2011 was $17,773,541.47.  The Secured Lender is not required to submit a bid prior to the Auction to exercise its right to credit bid~~.

**5.**   ~~e.~~ Notice of Successful Bidder. As soon as immediately practicable after the Auction, but no later than one business day after the conclusion of the Auction, the Debtor

**EXHIBIT 2**

~~will~~**shall** file a notice of the results of the Auction with the Court and shall provide such notice to all parties requesting notice of the results of the Auction.

**6.**    ~~f.~~Objection Deadline to Sale Order.  Objections to the relief sought in the motion approving the Sale shall be in writing, filed and served ~~so as to be actually received by the Notice Parties (defined below)~~ no later than **October ~~13, 2011, at 12:00 p.m.~~ ~~prevailing Mountain Time.~~19, 2011.**

**7.**    ~~g.~~Data Room.  Any person or entity that wishes to conduct due diligence with respect to the Assets must first deliver to the Debtor an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtor.  The executed confidentiality agreement must be signed and transmitted by the person or entity wishing to become a potential bidder so as to be received by Alliance Management, 1400 Sixteenth Street, Denver, Colorado, 80202, Attention: Alex G. Smith

**B.    The ~~Bid Deadline and~~ Bid Procedures**

1.    ~~The deadline for a potential bidder to submit a bid to the Debtor shall be~~ ~~September 30, 2011 (the "Bid Deadline").  Any potential bidder who fails to submit a bid so as to be received in advance of the Bid Deadline shall not be permitted to~~ participate in ~~the Auction, absent consent by the Debtor in its sole discretion.~~  **Stalking Horse Agreement & Break-up Fee.  The Debtor shall enter into and file with the Court a "stalking horse" agreement (the "Stalking Horse Agreement") governing the purchase of the Assets by MCM Acquisition Co. or its designee (the "Stalking Horse Bidder").  The Stalking Horse Agreement generally provides for the sale of the Debtor's machinery and equipment, and further provides for a break-up fee of $100,000 plus fees and expenses incurred by the Stalking Horse Bidder in connection with the Auction and Sale up to a maximum amount of $16,000 to be provided to the Stalking Horse Bidder in the event that the Stalking Horse Bidder is not the Successful Bidder (the "Break-Up Fee").  The amount of the Break-Up Fee shall be considered by the Debtor in determining** the highest or otherwise best bid **and the net value that the Debtor and its estate will realize at any Auction.**

~~2.    Before the Bid Deadline, a potential bidder that desires to make a bid shall deliver copies of its bid in writing and executed by an individual or individuals authorized to bind the potential bidder.  Each bid shall be served by courier or e-mail or as otherwise specified by the Debtor.~~

**2.**    ~~3.~~**Qualified Bidder.**  Absent consent by the Debtor in its sole discretion, ~~the Debtor will only allow bidders at the Auction whose bids for the Assets include the following~~a **"Qualified Bidder" is a potential bidder that on or before October 17, 2011 at** 5:00 p.m. prevailing Mountain Time **(the "Bid Deadline")**:

a.    ~~Financials~~**Submits financial reports** or other information to **the Debtor that** demonstrate the financial capability to consummate the Sale~~.~~**;**

b.    ~~A definitive written and signed agreement that:~~**Provides to the Debtor an earnest money deposit in the amount of $565,000 (the "Earnest Money Deposit") in**

**the form of a cashier's check, wire transfer, or other certified funds made payable to the Debtor. Earnest Money Deposits will be nonrefundable if the bidder is determined to be the Successful Bidder (as defined below) and such bidder fails to purchase the Assets but will otherwise be refundable if the bidder is not the Successful Bidder;**

> i. ~~Provides~~ for the purchase of substantially all or a significant portion of the Assets in cash.

> ii. ~~Is not~~ conditioned on obtaining financing or the outcome of any unperformed due diligence by the bidder.

> **c.** ~~iii.~~ Fully discloses the identity of ~~the~~**such** bidder.**;**

> **d.** ~~iv. Contains~~**Provides** written evidence that the bidder has the requisite corporate or similar authority to consummate the proposed Sale.**;**

> **e.** ~~v.~~ Identifies any executory contracts ("Contracts") or unexpired leases ("Leases") to be assumed and assigned in connection with the Sale; ~~and~~

> **f.** ~~vi.~~ Includes, with respect to the proposed Contracts and Leases, evidence of adequate assurance of performance with respect to such Leases or Contracts.**;**

> **g. Provides a signed contract substantially in the form of the Stalking Horse Agreement, marked to show any changes made thereto, which agreement must (1) provide** for the purchase of substantially all or a significant portion of the Assets in cash **(2) not have conditions to close that are not present in the Stalking Horse Agreement, (3) not request or entitle the bidder to any break-up fee, expense reimbursement or similar type of payment; and (4) not be** conditioned on obtaining financing or the outcome of any unperformed due diligence by the bidder**;**

> **h. Provides written consent for the sharing of information provided to the Debtor with creditors and interested parties in this case; and**

> **i. Agrees to close the proposed sale within two business days following the entry of the Court's order approving the Sale.**

~~All bids will be considered, but~~**The Stalking Horse Bidder and the Secured Lender are each a Qualified Bidder for all purposes hereunder. Only Qualified Bidders that meet the requirements set forth above may** participate in **the Auction; provided, however, that** the Debtor reserves the right to **consider or** reject any or all ~~bids~~**submissions** in its sole discretion. Bids will be evaluated on numerous grounds~~; however, bids that are unconditional and contemplate sales that may be consummated fully in cash on or immediately after the Sale Hearing are preferred~~**. The Debtor will consult with the Secured Lender, the Official Committee of Unsecured Creditors and the Petitioning Creditors regarding the Qualified Bidders**.

**3.**      **Reservation of Rights.**  The Debtor reserves the right to (i) modify the Bid Procedures at or prior to the Auction if such modification will better promote the goals of the Auction, (ii) impose, at or prior to the Auction, additional customary terms and conditions on the sale of some or all of the Assets and (iii) adjourn or cancel the Auction at the Auction and/or adjourn the Sale Hearing in open court without further notice, all in such a manner that is not materially inconsistent with any prior order of the Bankruptcy Court and the Debtor deems such modifications are consistent with the performance of its fiduciary obligations.

**C.      The Auction**

1.      ~~The Auction~~**If there is at least one Qualified Bidder other than the Stalking Horse Bidder by the Bid Deadline, the Auction with respect to the Assets** shall take place at the offices of Brownstein Hyatt Farber Schreck, LLP, 410 Seventeenth Street, Suite 2200, Denver, Colorado ~~80202~~**80202,** and shall commence on **October ~~11,~~19, 2011 at 10:00 a.m.** prevailing Mountain Time~~, which is three business days prior to the Sale Hearing~~.

**2.      If there is no Qualified Bidder other than the Stalking Horse Bidder the Bid Deadline, then the Auction will not be held and, pursuant to the Stalking Horse Agreement, the Stalking Horse Bidder shall purchase, acquire and accept from the Debtor, and the Debtor shall sell, transfer, assign, convey and deliver to the Stalking Horse Bidder (or its designated affiliate or affiliates) all of the Debtor's right, title and interest in, to and under the machinery and equipment, free and clear of all liens to the extent permissible under Bankruptcy Code § 363(f) free and clear of any claims or interests the Debtor may have.**

**3.**      2.~~Only potential bidders that submitted a bid and the required materials~~**Qualified Bidders** are eligible to participate at the Auction, unless the Debtor determines in its sole discretion otherwise.

**4.**      3.~~The Auction shall be governed by the following procedures, which procedures shall be subject to modification by the Debtor as the Debtor deems necessary to better promote the goals of the Auction and to comply with its fiduciary obligations:

a.      The bidders shall appear in person at the Auction, or through a duly authorized representative.

~~b.      The Debtor may notify all other parties that submitted a bid, the bid selected by the Debtor as the highest or otherwise best bid following the Bid Deadline (the "Stalking Horse Bid") by 5:00 p.m. prevailing Mountain Time on the day preceding the start of the Auction.~~

**b.**      c.~~The Auction shall commence with the Debtor confirming the ~~particulars~~**terms** of the **bid set forth in the** Stalking Horse ~~Bid and asking for higher and better offers~~**Agreement (the "Stalking Horse Bid")**.

**c.      Bidding shall continue with a bid in the amount of at least $5,918,000 (which is equal to the amount of the Stalking Horse Bid, the Break-Up Fee, and an initial incremental increase in the amount of $150,000) and shall continue in**

**increments of $50,000 or more thereafter until there is a Successful Bid (as defined below) and a Back-up Bid (as defined below).**

      **d.**    **All Qualified Bidders shall have the right to submit additional bids and make additional modifications to their respective modified purchase agreements, as applicable, at the Auction to improve such bids.**

      **e.**    **The Auction may include individual negotiations with the Qualified Bidders and/or open bidding in the presence of all other Qualified Bidders.**

      **f.**    ~~d.~~ The Auction shall continue until there is only one bid (or more than one bid for non-overlapping portions of the Assets that collectively constitute substantially all or a portion of the Assets) that the Debtor determines, subject to Bankruptcy Court approval, is the highest or otherwise best offer or offers that together constitute the highest or otherwise best offer or offers for the Assets from among the bids submitted at the Auction (the "Successful Bid," with the maker of the bid the "Successful Bidder"). The next highest or otherwise best bid will be the "Back-Up Bid" and the maker of the bid will be the "Back-Up Bidder." Prior to the Sale Hearing, or at such time as agreed to by the Debtor and the Successful Bidder**(s)**, the Successful Bidder**(s)** and the Debtor shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid**(s)** were made.

      **g.**    ~~e.~~ The Debtor reserves the right to (i) determine in its discretion which bid is the highest or otherwise best bid(s), and (ii) reject at any time, without liability, any offer that the Debtor, in its sole discretion, deems to be (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or procedures set forth therein or in the Bid Procedures Order, or (3) contrary to the best interests of the Debtor and its estate.

    **5.**    ~~4.~~ The Successful **Bid(s) and Back-Up** Bid(s) submitted at the Auction shall constitute ~~an~~ irrevocable ~~offer~~**offers** and be binding on the Successful Bidder**(s)** and the Back-Up Bidder**(s)** from the time the ~~bid is~~**bids are** submitted until **45 days after** entry of the Sale Order~~.~~ **(defined below). If the Successful Bidder fails to close within 14 days after entry of the Sale Order, then such bidder shall be deemed to have consented to the closing of the sale of the Assets to the Back-Up Bidder and shall be deemed to have forfeited its Earnest Money Deposit to the estate; provided that the Debtor, in its discretion, may extend the 14 day closing requirement if the Debtor believes it is in the best interest to do so.**

    **6.**    ~~5.~~ The Debtor intends to sell some or all of the Assets to the Successful Bidder**(s)** upon the approval of the Successful Bid**(s)** and, if applicable, the Back-Up Bid(s) by the Court at or after the Sale Hearing. The Debtor's presentation of a particular Successful Bid and Back-Up Bid to the Court for approval does not constitute the Debtor's acceptance of the bid. The Debtor will be deemed to have accepted a bid only when the bid has been approved by the Court at the Sale Hearing pursuant to a written order (the "Sale Order").

**D.    Assumption Procedures**

1.    ~~Within one business day after receiving the schedule from each bidder~~**At the close of the Auction, the Successful Bidder(s) and the Back-Up Bidder(s) shall provide a schedule to the Debtor** of those executory contracts and unexpired leases ~~it~~**each** wishes to assume (the "Designated Contracts"~~), and no later than one business day before the Sale Hearing (subject to adjustment as provided below), the Debtor shall file with the Court and provide to each counterparty to a Contract or Lease set forth on such schedule a notice of assumption, assignment, and cure (the "Cure Notice"). The Cure Notice shall include the proposed purchaser's calculation of the cure amount (the "Cure Amount") for each such Designated Contract.~~**.**

2.    ~~Any counterparty to a Designated Contract shall file and serve any objections to (i) the proposed~~**The Debtor does not intend to seek approval of** assumption and assignment ~~set forth in the Cure Notice and (ii) if applicable, the proposed Cure Amount, no later than one calendar day before the Sale Hearing. Notwithstanding the foregoing, if a Contract or Lease is added to the schedule of Designated Contracts on the date of the Auction, a copy of the applicable Cure Notice shall be served on the counterparty by overnight courier service within one business day of such addition (and in no event less than one business day before the Sale Hearing) and any counterparty may file an objection as aforesaid at any time prior to the Sale Hearing~~**of any Designated Contracts at the Sale Hearing. Instead, the sale agreement between the Successful Bidder (or the Back-Up Bidder(s)) shall provide that the parties shall work together after sale closing to provide for** the assumption and assignment of **any Designated Contracts, and the Debtor shall file any such motions post-sale closing**.

~~3.    At the Sale Hearing, only those Designated Contracts (and the corresponding Cure Amounts) listed on the Cure Notice that have been selected to be assumed by the Successful Bidder at the Auction (the "Assumed Contracts") shall be subject to approval by the Bankruptcy Court, and the Debtor shall reserve its rights with regard to all other Contracts and Leases. If no objection to the Cure Notice with respect to the Designated Contracts is timely received, (i) the counterparty to an Assumed Contract shall be deemed to have consented to~~ the assumption and assignment of ~~the Assumed Contract to the Successful Bidder and shall be forever barred from asserting any objection with regard to such assumption and assignment, and (ii) the Cure Amount set forth in the Cure Notice shall be controlling, notwithstanding anything to the contrary in any Assumed Contract, or any other document, and the counterparty to an Assumed Contract shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Assumed Contract against the Debtor or the Successful Bidder, or the property of any of them.~~

**E.    Sale of Excluded Assets**

**Notwithstanding Sections B and C above, the Debtor will consider bids for a portion or all of its assets that are not contemplated to be sold under the Stalking Horse Agreement, including the Debtor's accounts receivable, inventory, leased assets, cash and cash equivalents, trade and brand names, and causes of action (the "Excluded Assets"). To the extent the Excluded Assets are not included in the Successful Bid(s) or Back-up Bid(s), the Debtor shall use the time after the Auction to engage in discussions with potential**

**bidders for the Excluded Assets and enter into purchase agreements with such bidders for the sale of some or all of the Excluded Assets, subject to final approval by the Court at the Sale Hearing.**

Document comparison by Workshare Professional on Thursday, October 06, 2011
6:48:34 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://BHFSDOCS/1585839/9 |
| Description | BHFSDOCS-#1585839-v9-<br>Exhibit_to_Sale_and_Bid_Procedures_Motion |
| Document 2 ID | PowerDocs://BHFSDOCS/1585839/14 |
| Description | BHFSDOCS-#1585839-v14-<br>Exhibit_to_Sale_and_Bid_Procedures_Motion |
| Rendering set | ms word color |

| Legend: | |
|---|---|
| **Insertion** | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| **Moved to** | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 79 |
| Deletions | 76 |
| Moved from | 7 |
| Moved to | 7 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 169 |

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| In re | Bankruptcy Case Nos. 11-29209-HRT, 11-32656-HRT |
| MOUNTAIN CITY MEAT CO., INC. | |
| Debtor. | Jointly Administered Voluntary and Contested Involuntary Cases under Case No. 11-32656-HRT |
| | Chapter 11 |

## ORDER APPROVING BID PROCEDURES

Upon the motion (the "Sale and Bid Procedures Motion") filed in the United States Bankruptcy Court for the District of Colorado (the "Court") by Mountain City Meat Co., Inc. (the "Debtor"), pursuant to sections 105, 363, and 365 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and Rules 2002, 6003, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an emergency order (the "Bid Procedures Order") approving the (a) bid procedures in connection with the sale of substantially all the Debtor's assets (the "Bid Procedures"), (b) notice of sale, Auction,[1] and setting the Sale Hearing, all as more fully described in the Sale and Bid Procedures Motion; and the Court having jurisdiction to consider the Sale and Bid Procedures Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and due and proper notice of the Sale and Bid Procedures Motion having been provided, and no other or further notice need being required; and the Court having determined that the relief requested in the Sale and Bid Procedures Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest herein; and upon the record herein; and after due deliberation thereon; and good and

---

[1] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale and Bid Procedures Motion.

EXHIBIT
3

sufficient cause appearing therefor; it is hereby

**FOUND AND DETERMINED THAT:**

A.      The Court has jurisdiction over the Sale and Bid Procedures Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue of this case and the Sale and Bid Procedures Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.      The statutory and procedural predicates for the relief requested in the Sale and Bid Procedures Motion are Bankruptcy Code §§ 105, 363, and 365 and Bankruptcy Rules 2002, 6003, 6004, and 6006.

C.      As evidenced by the certificates of service previously filed with this Court, good and sufficient notice of the relief sought in the Sale and Bid Procedures Motion has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the Bid Procedures has been afforded to all interested persons and entities including, but not limited to: (i) the office of the United States Trustee for the District of Colorado; (ii) those parties identified as the Debtor's 20 largest unsecured creditors pursuant to Bankruptcy Rule 1007(d); (iii) all federal, state, and local taxing authorities that have jurisdiction over the Debtor's assets; (iv) all other parties that have filed a notice of appearance and demand for service of papers in this bankruptcy case under Bankruptcy Rule 2002; (v) all entities known or reasonably believed to have asserted a lien, encumbrance, claim or other interest on or in the Assets the Debtor seeks to assign or sell; and (vi) the petitioning creditors in the involuntary bankruptcy case currently pending against the Debtor, Case Number 11-29209-HRT and their counsel.

D.      The Debtor's proposed notice of the Bid Procedures, the Auction and the hearing to approve the Sale (the "Sale Hearing") is appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

E.      The Bid Procedures attached hereto as Exhibit 1 are fair, reasonable, and appropriate and are designed to maximize value for the benefit of the Debtor and its estate from any sale of the Assets.

F.      The Debtor has demonstrated a sound business justification to (i) proceed with the Asset Purchase Agreement with MCM Acquisition Co. ("Purchaser") to establish a minimum bidding price for the Debtor's machinery and equipment and (ii) pay the proposed Break-Up Fee (as defined in the Bid Procedures) under the circumstances, timing and procedures set forth in the Bid Procedures.

G.      The entry of this Bid Procedures Order is in the best interests of the Debtor and its estate, creditors, and interest holders and all other parties in interest herein; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The relief requested in the Sale and Bid Procedures Motion is granted in the manner and to the extent provided herein.

2.      The Bid Procedures attached hereto as Exhibit 1 are approved.

3.      Any objections to the Bid Procedures and any objections to the entry of this Bid Procedures Order or the relief granted herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

4.      The Break-Up Fee is fair and reasonable and will provide a benefit to the Debtor's estate and creditors.  The Debtor's payment to the Purchaser under this Order and upon the conditions as set forth in the Stalking Horse Agreement of the Break-Up Fee is (i) an actual and

necessary cost and expense of preserving the Debtor's estate within the meaning of Bankruptcy Code § 503(b); (ii) of substantial benefit to the Debtor's estate; (iii) reasonable and appropriate, in light of, among other things, (1) the size and nature of the proposed sale, (2) the substantial efforts that have been and will be expended by the Purchaser, and (3) the benefits the Purchaser has provided to the Debtor's estate and creditors and all parties in interest herein, notwithstanding that the proposed sale is subject to higher or better offers; (iv) not a penalty, but rather, a reasonable estimate of the damages to be suffered by the Purchaser in the event the transaction contemplated by the Stalking Horse Agreement is not consummated under the circumstances set forth therein; and (v) necessary to ensure that the Purchaser will continue to pursue its proposed acquisition of the Debtor's machinery and equipment.  Absent authorization of the Break-Up Fee, the Debtor may lose the opportunity to obtain the highest or best available offer for the Assets.  As a result, the payment of the Break-Up Fee is an expense necessary to maximize the value of the Debtor's estate.

5.      If there is at least one Qualified Bidder (as defined in the Bid Procedures) other than the Stalking Horse Bidder by the Bid Deadline, the Auction shall be conducted at the offices of Brownstein Hyatt Farber Schreck, LLP, 410 17th Street, Suite 2200, Denver, Colorado 80202 on **October 19, 2011, at 10:00 a.m. (prevailing Mountain Time).**

6.      The Sale Hearing to consider the Debtor's request for entry of an order approving the Sale (the "Sale Order") shall be held on **October 21, 2011, at 9:00 a.m. (prevailing Mountain Time)** in Courtroom C203, Byron G. Rogers U.S. Courthouse, 1929 Stout Street, Denver, Colorado.  The Sale Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing.

7.      Objections to entry of the Sale Order shall be in writing, filed, and served so as to

be <u>actually received</u> by **October 19, 2011 (prevailing Mountain Time).**

8.      The Break-Up Fee is hereby approved.  The Break-Up Fee payable to the Purchaser must be paid from the proceeds of the Sale in the event the Purchaser is not the successful bidder at the Auction.

9.      The Debtor is authorized and empowered to pay the Break-Up Fee without further order of the Court if the Purchaser is not the successful bidder at the Auction.  The Debtor is not permitted to offer the Break-Up Fee (or any similar fee or expense reimbursement) to any other bidder.

10.      As soon as practicable after the conclusion of the Auction, but no later than before the Sale Hearing, the Debtor shall file a final form of Sale Order.

11.      Notwithstanding Rules 6004(h) and 6006(d) of the Bankruptcy Rules, this Bid Procedures Order shall not be stayed for 14 days after the entry hereof, and this Bid Procedures Order shall be effective and enforceable immediately upon signature hereof.

Dated: October _____ , 2011.


                                                    BY THE COURT


                                                    _____
                                                    United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| In re | **Bankruptcy Case Nos. 11-29209-HRT,** **11-32656-HRT** |
| MOUNTAIN CITY MEAT CO., INC. | |
| Debtor. | **Jointly Administered Voluntary and** **Contested Involuntary Cases under** Case No. 11-32656-**HRT** |
| | Chapter 11 |

## ORDER APPROVING ~~(A)~~ BID PROCEDURES, ~~(B) NOTICE OF SALE, AUCTION,~~ ~~AND SALE HEARING, (C) ASSUMPTION PROCEDURES AND RELATED NOTICES~~

Upon the motion (the "Sale and Bid Procedures Motion") filed in the United States

Bankruptcy Court for the District of Colorado (the "Court")[†] by Mountain City Meat Co., Inc.

(the "Debtor"), pursuant to sections 105, 363, and 365 of Title 11 of the United States Code, 11

U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and Rules 2002, 6003, 6004, and 6006 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an emergency order (the

"Bid Procedures Order") approving the (a) bid procedures in connection with the sale of

substantially all the Debtor's assets (the "Bid Procedures"), (b) notice of sale, Auction,[1] and

setting the Sale Hearing, all as more fully described in the Sale and Bid Procedures Motion; and

the Court having jurisdiction to consider the Sale and Bid Procedures Motion and the relief

requested therein pursuant to 28 U.S.C. §§ 157 and 1334~~; and consideration of the Sale and Bid~~

~~Procedures Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C.~~

~~§ 157 (b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409~~; and

due and proper notice of the Sale and Bid Procedures Motion having been provided, and no other

---

[†] ~~All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale and Bid~~ ~~Procedures Motion.~~
[1] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale and Bid Procedures Motion.

**EXHIBIT 4**

or further notice need being required; and the Court having determined that the relief requested in the Sale and Bid Procedures Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest herein; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby

**FOUND AND DETERMINED THAT:**

A.     The Court has jurisdiction over the Sale and Bid Procedures Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue of ~~these cases~~**this case** and the Sale and Bid Procedures Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.     The statutory and procedural predicates for the relief requested in the Sale and Bid Procedures Motion are ~~sections~~**Bankruptcy Code §§** 105, 363, and 365 ~~of the Bankruptcy Code~~ and Bankruptcy Rules 2002, 6003, 6004, and 6006.

C.     As evidenced by the certificates of service previously filed with this Court, good and sufficient notice of the relief sought in the Sale and Bid Procedures Motion has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the Bid Procedures has been afforded to all interested persons and entities including, but not limited to: (i) the office of the United States Trustee for the District of Colorado; (ii) those parties identified as the Debtor's 20 largest unsecured creditors pursuant to Bankruptcy Rule 1007(d); (iii) all federal, state, and local taxing authorities that have jurisdiction over the Debtor's assets; (iv) all other parties that have filed a notice of appearance and demand for service of papers in this bankruptcy case under Bankruptcy Rule 2002; (v) all entities known or reasonably believed to have asserted a lien, encumbrance, claim or other interest on or in the Assets the Debtor seeks

to assign or sell; and (vi) the petitioning creditors in the involuntary bankruptcy case currently pending against the Debtor, Case Number 11-29209-HRT and their counsel.

D.      The Debtor's proposed notice of the Bid Procedures, the Auction and the hearing to approve the Sale (the "Sale Hearing") is appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

E.      The Bid Procedures attached hereto as Exhibit 1 are fair, reasonable, and appropriate and are designed to maximize value for the benefit of the Debtor and its estate from any sale of the Assets.

F.      The ~~relief requested in the Sale and Bid Procedures Motion is necessary to avoid immediate and irreparable harm to the Debtor.~~**Debtor has demonstrated a sound business justification to (i) proceed with the Asset Purchase Agreement with MCM Acquisition Co. ("Purchaser") to establish a minimum bidding price for the Debtor's machinery and equipment and (ii) pay the proposed Break-Up Fee (as defined in the Bid Procedures) under the circumstances, timing and procedures set forth in the Bid Procedures.**

G.      The entry of this Bid Procedures Order is in the best interests of the Debtor and its estate, creditors, and interest holders and all other parties in interest herein; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The relief requested in the Sale and Bid Procedures Motion is granted in the manner and to the extent provided herein.

2.      The Bid Procedures attached hereto as Exhibit 1 are approved.

3.      Any objections to the Bid Procedures and any objections to the entry of this Bid Procedures Order or the relief granted herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

4.      The Break-Up Fee is fair and reasonable and will provide a benefit to the Debtor's estate and creditors.  The Debtor's payment to the Purchaser under this Order and upon the conditions as set forth in the Stalking Horse Agreement of the Break-Up Fee is (i) an actual and necessary cost and expense of preserving the Debtor's estate within the meaning of Bankruptcy Code § 503(b); (ii) of substantial benefit to the Debtor's estate; (iii) reasonable and appropriate, in light of, among other things, (1) the size and nature of the proposed sale, (2) the substantial efforts that have been and will be expended by the Purchaser, and (3) the benefits the Purchaser has provided to the Debtor's estate and creditors and all parties in interest herein, notwithstanding that the proposed sale is subject to higher or better offers; (iv) not a penalty, but rather, a reasonable estimate of the damages to be suffered by the Purchaser in the event the transaction contemplated by the Stalking Horse Agreement is not consummated under the circumstances set forth therein; and (v) necessary to ensure that the Purchaser will continue to pursue its proposed acquisition of the Debtor's machinery and equipment.  Absent authorization of the Break-Up Fee, the Debtor may lose the opportunity to obtain the highest or best available offer for the Assets.  As a result, the payment of the Break-Up Fee is an expense necessary to maximize the value of the Debtor's estate.

5.      If there is at least one Qualified Bidder (as defined in the Bid Procedures) other than the Stalking Horse Bidder by the Bid Deadline, the Auction shall be conducted at the offices of Brownstein Hyatt Farber Schreck, LLP, 410 17th Street, Suite 2200, Denver, Colorado 80202 on October 19, 2011, at 10:00 a.m. (prevailing Mountain Time).

6.      4.    The Sale Hearing to consider the Debtor's request for entry of an order approving the Sale (the "Sale Order") shall be held on October 14,21, 2011, at 9:00 a.m.

(prevailing Mountain Time) in Courtroom ~~D of the United States Bankruptcy Court for the District of Colorado, Courtroom C-502,~~C203, Byron ~~G.~~ Rogers U.S. Courthouse, 1929 Stout Street, Denver, Colorado. The Sale Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing.

7. ~~5.~~ Objections to entry of the Sale Order shall be in writing, filed, and served so as to be underlined actually received by **October ~~13, 2011, at 12:00 p.m.~~19, 2011 (prevailing Mountain Time), upon: (i) Counsel for the Debtor,** ~~Brownstein Hyatt Farber Schreck, LLP, 410 Seventeenth Street, Suite 2200, Denver, Colorado~~ 80202, Attention:  Michael J. Pankow, and (ii) counsel for Fifth Third Bank, Markus William Young & Zimmermann LLP, 1700 Lincoln St., Ste. 4000, Denver, CO 80203, Attention: John F. Young.

~~6.~~ ~~Within one business day after receiving the schedule from each bidder of those executory contracts and unexpired leases it wishes to assume (the "Designated Contracts"), and no later than one business day before the Sale Hearing (subject to adjustment as provided below), the Debtor shall file with the Court and provide to each counterparty to a Contract or Lease set forth on such schedule a notice of assumption, assignment, and cure (the "Cure Notice").  The Cure Notice shall include the proposed purchaser's calculation of the cure amount (the "Cure Amount") for each such Designated Contract.~~

~~7.~~ ~~Any counterparty to a Designated Contract shall file and serve any objections to (i) the proposed assumption and assignment set forth in the Cure Notice and (ii) if applicable, the proposed Cure Amount, no later than one calendar day before the Sale Hearing.  Notwithstanding the foregoing, if a Contract or Lease is added to the schedule of Designated Contracts on the date of the Auction, a copy of the applicable Cure Notice shall be served on the counterparty by overnight courier service within one business day of such addition (and in no event less than one~~

~~business day before the Sale Hearing) and any counterparty may file an objection as aforesaid at any time prior to the Sale Hearing.~~

~~8.      At the Sale Hearing, only those Designated Contracts (and the corresponding Cure Amounts) listed on the Cure Notice that have been selected to be assumed by the Successful Bidder at the Auction (the "Assumed Contracts") shall be subject to approval by the Bankruptcy Court, and the Debtor shall reserve its rights with regard to all other Contracts and Leases. If no objection to the Cure Notice with respect to the Designated Contracts is timely received, (i) the counterparty to an Assumed Contract shall be deemed to have consented to the assumption and assignment of the Assumed Contract to the Successful Bidder and shall be forever barred from asserting any objection with regard to such assumption and assignment, and (ii) the Cure Amount set forth in the Cure Notice shall be controlling, notwithstanding anything to the contrary in any Assumed Contract, or any other document, and the counterparty to an Assumed Contract shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Assumed Contract against the Debtor or the Successful Bidder, or the property of any of them.~~**The Break-Up Fee is hereby approved.  The Break-Up Fee payable to the Purchaser must be paid from the proceeds of the Sale in the event the Purchaser is not the successful bidder at the Auction.**

**9.      The Debtor is authorized and empowered to pay the Break-Up Fee without further order of the Court if the Purchaser is not the successful bidder at the Auction.  The Debtor is not permitted to offer the Break-Up Fee (or any similar fee or expense reimbursement) to any other bidder.**

**10.**    ~~9.~~ As soon as practicable after the conclusion of the Auction, but no later than before the Sale Hearing, the Debtor shall file a final form of Sale Order.

**11.**    ~~10.~~    Notwithstanding Rules 6004(h) and 6006(d) of the Bankruptcy Rules, this Bid Procedures Order shall not be stayed for 14 days after the entry hereof, and this Bid Procedures Order shall be effective and enforceable immediately upon signature hereof.

Dated: ~~September~~**October**         , 2011.

BY THE COURT

_____

United States Bankruptcy Judge

Document comparison by Workshare Professional on Thursday, October 06, 2011 6:59:25 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://BHFSDOCS/1585878/8 |
| Description | BHFSDOCS-#1585878-v8-Bid_Procedures_Order_-_Mountain_City_Meat |
| Document 2 ID | PowerDocs://BHFSDOCS/1585878/12 |
| Description | BHFSDOCS-#1585878-v12-Bid_Procedures_Order_-_Mountain_City_Meat |
| Rendering set | ms word color |

| Legend: | |
|---|---|
| **Insertion** | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| **Moved to** | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 26 |
| Deletions | 25 |
| Moved from | 2 |
| Moved to | 2 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 55 |

# CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of October, 2011, a true and correct copy of the **NOTICE OF REVISED BID PROCEDURES AND REVISED PROPOSED BID PROCEDURES ORDER** was served via U.S. Mail, postage pre-paid, and properly addressed to the following:

Alison Goldenberg
U.S. Trustee
999 18th Street, Suite 1551
Denver, CO 80202

John B. Wasserman
Sender & Wasserman, P.C.
1660 Lincoln St., Suite 2200
Denver, CO 80264

James T. Markus
John F. Young
Markus Williams Young & Zimmermann,
1700 Lincoln Street, Suite 4000
Denver, CO 80203

Elizabeth A. Flaagan
Faegre & Benson LLP
1700 Lincoln St., Suite 3200
Denver, CO 80203

William A. Richey
Jeffrey A. Weinman
Weinman & Associates, P.C.
730 17th Street, Suite 240
Denver, CO 80202-3506

Brent R. Cohen
Rothgerber Johnson & Lyons, LLP
One Tabor Center
1200 17th Street, Suite 3000
Denver, CO 80202-5855

Gil Geldreich
Tennessee Department of Labor &
Workforce Dev-Boiler/Elevator Div.
PO Box 20207
Nashville, Tennessee 37202-0207

John C. Smiley, #16210
Lindquist & Vennum P.L.L.P.
600 17th Street, Suite 1800 South
Denver, CO 80202-5441

Darrell G. Waas
Patricia C. Campbell
Waas Campbell Rivera Johnson &
Velasquez LLP
1350 Seventeenth St., Suite 450
Denver, CO 80202

Kimberly H. Tyson
Ireland, Stapleton, Pryor & Pascoe, PC
1675 Broadway, Suite 2600
Denver, CO 80202

Joshua W. Wolfshohl
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002

Air Liquide Industrial U.S. LP
2700 Post Oak Boulevard
Houston, Texas 77056
Attention: Gwendolyn Young Smithheart

Joel Laufer
5290 DTC Parkway, Suite 150
Englewood, CO 80111

A. Todd Darwin
PO Drawer 1897
Spartanburg, SC 29304

15368\6\1594580.2

Andrew E. Schwartz
Alan J. Lipkin
Willkie Farr & Gallagher LLP
787 Seventh Ave.
New York, NY 10019

Christopher J. Redmond
Christopher Miles
Husch Blackwell LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112

Milnor H. Senior, III
Holme Robert & Owens
1700 Lincoln St. , Ste. 4100
Denver, CO 80203-4541

Howard S. Sher
Michele L. Walton
2301 W. Big Beaver Rd., Suite 777
Troy, MI 48084-3330

David T. Brennan
950 17th Street, Suite 1600
Denver, CO 80202

Robert G Hanseman
1900 Kettering Tower
Dayton, OH 45402

*s/Connie Windholz*
Connie Windholz, Paralegal

15368\6\1594580.2